**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION**

| | | |
|---|---|---|
| Gabrielle Rogers, on behalf of herself and all others similarly situated, | § § § § § | |
| Plaintiff | | |
| v. | § § | Civil Action No. _____ |
| 12291 CBW, LLC d/b/a Temptations Cabaret and Eric Langan, | § § § § § | COLLECTIVE ACTION JURY TRIAL DEMANDED |
| Defendants | | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**I.   INTRODUCTION**

1. This is an action brought under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq., to redress Defendants' long-standing abuse of the federal minimum wage and overtime standards. Plaintiff brings this action as a collective action under 29 U.S.C. § 216(b). The violations of the FLSA are straightforward: the Defendants do not pay its employees anything.

2. Defendant 12291 CBW, LLC d/b/a Temptations Cabaret is a gentlemen's club for adult entertainment with locations throughout Texas and Louisiana that operate under the assumed name of Temptations Cabaret.

3. Defendant Eric Langan is the owner, president, and director of 12291 CBW, LLC.

4. Plaintiff Gabrielle Rogers is a nonexempt former employee who worked at Temptations Cabaret located at 5900 College Street, Beaumont, TX 77707 from on or about November of 2015 through on or about November of 2018. During her tenure as a dancer at Defendants' adult entertainment club, she did not receive the FLSA mandated minimum wage for all hours worked nor did she receive time and a half her regular rate for each hour worked over 40

each week. In fact, Defendants refused to compensate her whatsoever for any hours worked. Plaintiff's only compensation came in the form of tips from club patrons. Moreover, Plaintiff was required to divide her tips with Defendants and other employees who do not customarily receive tips. Therefore, Defendants have failed to compensate Plaintiff at the federal mandated minimum wage and overtime rate.

## II.     SUBJECT MATTER JURISDICTION AND VENUE

5.     This Court has jurisdiction over the subject matter of this action under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

6.     Venue is proper in the Eastern District of Texas, Beaumont Division, because a substantial portion of the events forming the basis of this suit occurred in this District and Division.

## III.     PARTIES AND PERSONAL JURISDICTION

7.     Plaintiff Gabrielle Rogers is an individual residing in Hardin County. Plaintiff's written consent to this action is attached to this Complaint as "Exhibit A."

8.     The Class Members are all current and former exotic dancers who worked at Defendants' adult entertainment club at any time starting three years before this Complaint was filed up to the present.

9.     Defendant 12291 CBW, LLC d/b/a Temptations Cabaret is a Texas limited liability company that does business as Temptations Cabaret in Jefferson County, Texas. Defendant may be served process through its registered agent Fred McDonald, 1421 Highlake Lane, Weatherford, Texas 76087.

10.     Defendant Eric Langan is an individual residing in Harris County, Texas and may be served with process at 10959 Cutten Road, Houston, Texas 77066.

## IV.    FLSA COVERAGE

11.    At all material times, Defendants have been an employer within the meaning of 3(d) of the FLSA. 29 U.S.C. § 203(d).

12.    At all material times, Plaintiff and Class Members were individual employees who engaged in commerce or in the production of goods for commerce as required by 29 USC § 206-207.

13.    Furthermore, Defendants have had, and continue to have, an annual business volume in excesses of $500,000.

14.    Defendant Eric Langan is the owner, president, and director of 12291 CBW, LLC d/b/a Temptations Cabaret.

15.    Defendant Eric Langan controlled the nature, pay structure, and employment relationship of the Plaintiff.

16.    Furthermore, Defendant Eric Langan had, at all times relevant to this lawsuit, the authority to hire and fire employees, the authority to direct and supervise the work of employees, the authority to sign on the business's checking accounts, including payroll accounts, and the authority to make decisions regarding employee compensation and capital expenditures. Additionally, he was responsible for the day-to-day affairs of the business. In particular, he was responsible for determining whether 12291 CBW, LLC d/b/a Temptations Cabaret complied with the Fair Labor Standards Act.

17.    As such, pursuant to 29 U.S.C. § 203(d), Defendant Eric Langan acted directly or indirectly in the interest of Plaintiff's employment as her employer, which makes him individually liable under the FLSA.

## V.   FACTS

18. The FLSA applied to Plaintiff and Class Members at all times in which they worked at Defendants' club.

19. No exemptions to the application of the FLSA apply to Plaintiff or the Class Members. For instance, neither Plaintiff nor any Class Member has ever been a professional or artist exempt from the provisions of the FLSA. The dancing required at Temptations Cabaret does not require invention, imagination or talent in a recognized field of artistic endeavor and Plaintiff and Class Members have never been compensated by Defendants on a set salary, wage, or fee basis. Rather, Plaintiff and Class Members' sole source of income while working for Defendants was tips given to them by the club's patrons, (*i.e.*, stage dancing or single dancing tips).

20. At all relevant times, Plaintiff and each Class Member were employees of Defendants under the FLSA. However, Defendants have classified and continue to classify all of its dancers as independent contractors.

21. Defendants' classification of Plaintiff as an independent contractor was not due to any unique factor related to her employment or relationship with Defendants. As a matter of common business policy, Defendants routinely misclassified all dancers as independent contractors as opposed to employees. As a result of this uniform misclassification, Plaintiff and Class Members were not paid the minimum wage or overtime wages required under the FLSA.

22. During the relevant period, the employment terms, conditions, and policies that applied to Plaintiff were the same as those applied to the other Class Members who worked as dancers at Defendants' club.

23. During the relevant period, no Class Member received any wages or other compensation from Defendants. Class Members generated their income solely through the tips

they received from Defendants' customers when they performed table, chair, couch, or other dances. Additionally, Defendants imposed a fee schedule that actually resulted in Plaintiff and Class Members paying for the privilege of dancing at Defendants' club. Defendants assessed a daily house fee to be paid by Plaintiff and Class Members per shift and demanded a portion of the gratuity the dancer received for each dance.

24. The money that Plaintiff receives from Defendants' patrons is a tip, not a service charge, as those terms are defined in 29 C.F.R. §§ 531.52, 531.53, and 531.55.

25. The money that Plaintiff receives from Defendants' patrons does not become part of the Defendants' gross receipts to be later distributed to Plaintiff and the other dancers. Instead, Plaintiff and the other dancers merely pay the club a portion of their tips.

26. The full amount Class Members are given by patrons in relation to dances they perform are not taken into Defendants' gross receipts, with a portion then paid out to the dancers. Defendants issue neither a 1099 nor W-2 forms to Class Members indicating any amounts being paid from their gross receipts to Class Members as service fees or wages.

27. Plaintiff and Class Members are tipped employees under the FLSA as they are engaged in an occupation in which they customarily and regularly receive more than $30 a month in tips.

28. However, Defendants are not entitled to take a tip credit for the amounts Plaintiff and Class Members received as tips. 29 U.S.C. § 203(m) requires an employer to inform its employee that it intends to rely on the tip credit to satisfy its minimum wage obligations. Here, Defendants affirmatively informed Plaintiff and the Class Members that they would not be paid at all, much less paid a tip credit adjusted minimum wage.

29. Defendants' misclassification of Plaintiff and the Class Members as independent contractors was designed to deny them their fundamental rights as employees to receive minimum wages, overtime, to demand and retain portions of tips given to Class Members by customers, and all done to enhance Defendants' profits.

30. Defendants' misclassification of Plaintiff and Class Members as independent contractors was willful. Defendants knew or should have known that Plaintiff and the Class Members were improperly classified as independent contractors. A cursory examination of the law would have revealed this basic fact.

31. Employment is defined with striking breadth in the context of wage and hour laws. The determining factor as to whether dancers like Plaintiff are employees or independent contractors under the FLSA is not the dancer's election, subjective intent, or any contract she might enter into. Instead, the test for determining whether an individual is an "employee" under the FLSA is the economic realities test. Under that test, employee status turns on whether the individual is, as a matter of economic reality, in business for herself and truly independent, or rather is economically dependent upon finding employment in others.

32. Workers cannot validly elect to be treated as independent contractors instead of employees.

33. Workers likewise cannot agree to be paid less than the minimum wage.

34. Under the applicable test, courts utilize several factors to determine economic dependence and employment status. These factors are: (i) the degree of control exercised by the alleged employer, (ii) the relative investments of the alleged employer and employee, (iii) the degree to which the employee's opportunity for profit and loss is determined by the employer, (iv)

the skill and initiative required in performing the job, (v) the permanency of the relationship, and (vi) the degree to which the alleged employee's tasks are integral to the employer's business.

35. The totality of the circumstances surrounding the relationship between Defendants and Plaintiff, and Defendants and Class Members, establishes economic dependence by the dancers on Defendants and thus employee status. As a matter of economic reality, Plaintiff and all other Class Members are not in business for themselves and truly independent, but rather are economically dependent upon finding employment in others, namely Defendants. The dancers are not engaged in occupations or business distinct from that of Defendants. Rather, their work is the basis for Defendants' business. Defendants obtain the customers who desire the dance entertainment and provide the workers who conduct the dance services on behalf of Defendants. Defendants retain pervasive control over the club operation as a whole and the dancer's duties are an integral part of the operation.

**A.     Degree of Control**

36. Plaintiff and the Class Members do not exert control over a meaningful part of the club business and do not stand as separate economic entities from Defendants. Defendants exercise control over all aspects of the working relationship with Plaintiff and the other dancers in the club.

37. Plaintiff and Class Members' economic status is inextricably linked to those conditions over which Defendants have complete control. Plaintiff and the other dancers are completely dependent on Defendants for their earnings. The club controls all of the advertising and promotion without which Plaintiff and Class Members could not survive economically. Moreover, Defendants create and control the atmosphere and surroundings at the club, the existence of which dictates the flow of customers into the club. The dancers have no control over the customer volume or the atmosphere at the club.

38. Defendants employ guidelines and rules dictating the way in which a dancer, like Plaintiff or the Class Members, may conduct herself. Defendants set the hours of operations, lengths of shifts dancers must work, the show time during which a dancer may perform, and set minimum dance tips. Defendants also determine the sequence in which a dancer may perform on stage during her stage rotation, the themes of dancers' performances, including their costuming and appearances, their conduct at work (*e.g.*, that they should be on the floor as much as possible when not on stage to mingle with the club's patrons), tip splits, and all other terms and conditions of employment.

39. Defendants require that its dancers work a minimum number of shifts every week and each shift must be a minimum number of hours. Dancers are required to report in and report out and the beginning and end of every shift. If a dancer arrives late, leaves early, or misses a shift, that dancer is subject to fine, penalty, or reprimand by Defendants.

40. Defendants routinely schedule dancers to work in excess of 40 hours per week and knowingly permit dancers to work in excess of 40 hours per week regularly.

41. Defendants, not the dancers, set the minimum tip amount that dancers must collect from patrons when performing dances. Defendants announce the minimum tip amount to patrons in the club wishing to see the dances.

42. The entire sum a dancer receives from a patron for a dance is not given to Defendants and taken into its gross receipts. Instead, the dancers keep their share of the payment under the tip share policy and pay over to Defendants and the club the portion they demand as their share or "rent." For example, for a table dance, Plaintiff would be required to pay the club a portion of the dollars collected from the club patron. Defendants do not issue a 1099 or W2 form to dancers characterizing or showing any sums being paid as service fees or wages.

43. Defendants establish the split or percentage which each dancer is required to pay it for each type of dance they receive during their shift. In addition, amounts must be shared with disk-jockeys, door staff, and other employees as part of Defendants' tip sharing policy. Further, dancers are expected to assist Defendants in selling drinks during their shift. The foregoing establishes that Defendants set the terms and conditions for all dancer's work. This is the hallmark of economic dependence.

**B.    Skill and Initiative**

44. Plaintiff, like all other dancers at Defendants' club, does not exercise the skill and initiative of a person in business for herself.

45. Plaintiff and Class Members are not required to have any specialized or unusual skills to work at Defendants' club. Prior dance experience is not required as a prerequisite to employment. Dancers are not required to attain a certain level of skill in order to dance at Defendants' club. There are no certification standards for dancers. There are no dance seminars, no specialized training, no instructional booklets, and no choreography provided or required in order to work at Defendants' club. The dance skills utilized are commensurate with those exercised by ordinary people dancing at a typical nightclub or a wedding.

46. Plaintiff, like the Class Members, does not have the opportunity to exercise the business skills and initiative necessary to elevate her status to that of an independent contractor. Dancers exercise no business management skills. They maintain no separate business structures or facilities. Dancers do not actively participate in any effort to increase the club's client base, enhance goodwill, or establish contracting possibilities. The scope of a dancer's initiative is restricted to decisions involving what clothes to wear (within Defendants' guidelines) or how provocatively to dance.

47. Plaintiff and Class Members are not permitted to hire or subcontract other qualified individuals to provide additional dances to patrons and increase their revenues, as an independent contractor in business for themselves would.

**C.    Relative Investment**

48. Plaintiff's relative investment is minor when compared to the investment made by Defendants.

49. Plaintiff, like all other dancers, has made no capital investment in the facilities, advertising, maintenance, sound systems, lights, food, beverage, inventory, or staffing at Defendants' club. A dancer's investment is limited to expenditures on costumes or makeup. But for Defendants' provision of the lavish club work environment, the dancers would earn nothing.

**D.    Opportunity for Profit and Loss**

50. Defendants, not the dancers like Plaintiff, manage all aspects of the business operation including attracting investors, establishing working hours and hours of operation, setting the atmosphere, coordinating advertising, hiring and controlling the staff. Defendants, not the dancers, takes the true business risks for Defendants' club.

51. Dancers like Plaintiff and Class Members do not control the key determinations of profit and loss of a successful enterprise. Specifically, Plaintiff is not responsible for any aspect of the enterprise's on-going business risk. For example, Defendants are responsible for all financing, the acquisition and/or lease of the physical facilities and equipment, inventory, the payment of wages (for managers, bartenders, etc.), and obtaining all the appropriate business insurance and licenses.

52. Defendants, not the dancers, establish the minimum dance tip amounts that should be collected from patrons when dancing.

53. The dance tips the dancers receive are not a return on a capital investment. They are a gratuity for services rendered. From this perspective, it is clear that a dancer's "return on investment" is no different than that of a waiter who serves food during a customer's meal at a restaurant.

**E.     Permanency**

54. Plaintiff worked for close to nine years as a dancer at Defendants' club. On information and belief, other dancers have worked for Defendants for a significant period of time.

**F.     Integral Part of Employer's Business**

55. Dancers, like Plaintiff and Class Members, are essential to the success of Defendants' club. The continued success of clubs such as Defendants' turns upon the provision of dances by the dancers for the club's patrons. In fact, the sole reason establishments like Temptations Cabaret exist is to showcase the dancers' physical attributes for their customers.

56. Moreover, Defendants are able to charge higher admission prices and a much higher price for their drinks than a comparable establishment without dancers because dancers are the main attraction of such clubs. As a result, the dancers are an integral part of Defendants' business.

57. The foregoing demonstrates that dancers like Plaintiff and Class Members are economically dependent on Defendants and subject to significant control by Defendants. Therefore, Plaintiff and Class Members were misclassified as independent contractors and should have been paid the minimum wage and overtime rate at all times they worked at Defendants' club and otherwise been afforded all rights and benefits of an employee under federal wage and hour laws.

58. All actions by Defendants herein described were willful, intentional, and not the result of mistake or inadvertence. Defendants were aware that the FLSA applied to the operation

of its club at all relevant times, and that under the economic realities test applicable to determining employment status under those laws, the dancers were misclassified as independent contractors. Defendants were aware of, or through the exercise of reasonable diligence should have been aware, of the multitude of previous cases holding dancers identically situated to Plaintiff and Class Members were employees, not independent contractors. *See, e.g., Jeffcoat v. State, Dep't of Labor*, 732 P.2d 1073 (Alaska 1987) (dancers are employees); *Martin v. Circle C Investments, Inc.*, MO-91-CA-43, 1991 WL 338239 (W.D. Tex. Mar. 27, 1991) (dancers are employees); *Martin v. Priba Corp.*, CIV.A.3:91-CV-2786-G, 1992 WL 486911 (N.D. Tex. Nov. 6, 1992) (dancers are employees); *Reich v. Circle C. Investments, Inc.*, 998 F.2d 324 (5th Cir. 1993) (dancers are employees); *Reich v. Priba Corp.*, 890 F. Supp. 586 (N.D. Tex. 1995) (dancers are employees); *Harrell v. Diamond A Entm't, Inc.*, 992 F. Supp. 1343 (M.D. Fla. 1997) (dancers are employees); *Doe v. Cin-Lan, Inc.*, 08-CV-12719, 2008 WL 4960170 (E.D. Mich. Nov. 20, 2008) (dancer substantially likely to be able to prove she's an employee); *Morse v. Mer Corp.*, 1:08-CV-1389-WTL-JMS, 2010 WL 2346334 (S.D. Ind. June 4, 2010) (dancers are employees); *Clincy v. Galardi S. Enterprises, Inc.*, 808 F. Supp. 2d 1326, 1329 (N.D. Ga. 2011) (dancers are employees); *Thompson v. Linda And A., Inc.*, 779 F. Supp. 2d 139 (D.D.C. 2011) (dancers are employees); *Thornton v. Crazy Horse, Inc.*, 3:06-CV-00251-TMB, 2012 WL 2175753 (D. Alaska June 14, 2012) (dancers are employees); *Milano's, Inc. v. Kansas Dep't of Labor, Contributions Unit*, 293 P.3d 707 (Kan. 2013) (dancers are employees); *Hart v. Rick's Cabaret Int'l, Inc.*, 09 CIV. 3043 PAE, 2013 WL 4822199 (S.D.N.Y. Sept. 10, 2013), reconsideration denied (Nov. 18, 2013) (dancers are employees).

## VI.     FLSA COLLECTIVE ACTION ALLEGATIONS

59.     Plaintiff seeks to bring her claims under the FLSA on behalf of herself and all other similarly situated workers of Defendants who worked in any week as an exotic dancer in three years immediately preceding the date on which this action was filed and continuing thereafter through the date on which final judgment is entered. Those who file a written consent will be a party to this action pursuant to 29 U.S.C. § 216(b). ("FLSA Class"). Plaintiff seeks unpaid minimum wages, unpaid overtime, misappropriated tips, liquidated damages, court costs, and attorneys' fees on behalf of the FLSA Class.

60.     Plaintiff has actual knowledge that Class Members have also been denied overtime pay for hours worked over forty hours per workweek and have been denied pay at the federally mandated minimum wage rate. Plaintiff worked with other exotic dancers at Defendants' establishment. As such, she has first-hand personal knowledge of the same pay violations at Defendants' establishments affecting other similarly situated dancers. Furthermore, other exotic dancers at Defendants' establishment have shared with her similar pay violation experiences as those described in this complaint.

61.      Other employees similarly situated to the Plaintiff work or have worked for Defendants' gentlemen's club, but were not paid overtime at the rate of one and one-half their regular rate when those hours exceeded forty hours per workweek. Furthermore, these same employees were denied pay at the federally mandated minimum wage rate.

62.     Although Defendants permitted and/or required the Class Members to work in excess of forty hours per workweek, Defendants have denied them full compensation for their hours worked over forty. Defendants have also denied them full compensation at the federally mandated minimum wage rate.

63. The Class Members perform or have performed the same or similar work as the Plaintiff.

64. Class Members regularly work or have worked in excess of forty hours during a workweek.

65. Class Members are not exempt from receiving overtime and/or pay at the federally mandated minimum wage rate under the FLSA.

66. As such, Class Members are similar to Plaintiff in terms of job duties, pay structure, misclassification as independent contractors and/or the denial of overtime and minimum wage.

67. Defendants' failure to pay overtime compensation and hours worked at the minimum wage rate required by the FLSA results from generally applicable policies or practices, and does not depend on the personal circumstances of the Class Members.

68. The experiences of the Plaintiff, with respect to her pay, and lack thereof, is typical of the experiences of the Class Members.

69. The specific job titles or precise job responsibilities of each Class Member does not prevent collective treatment.

70. All Class Members, irrespective of their particular job requirements, are entitled to overtime compensation for hours worked in excess of forty during a workweek.

71. All Class Members, irrespective of their particular job requirements, are entitled to compensation for hours worked at the federally mandated minimum wage rate.

72. All Class Members, irrespective of their particular job requirements, are entitled to their misappropriated tips.

73. Although the exact amount of damages may vary among Class Members, the damages for the Class Members can be easily calculated by a simple formula. The claims of all Class Members arise from a common nucleus of facts. The Defendants caused harm to all Class Members based on a systematic course of wrongful conduct resulting in liability under the FLSA.

74. As such, the class of similarly situated Plaintiffs is properly defined as follows:

**The Class Members are all of Defendants' current and former exotic dancers from any time starting three years before the date of filing this Complaint to the present.**

## VII.   CAUSES OF ACTION

**Violation of the FLSA—Collective Action**
**(Failure to Pay the Statutory Minimum Wage, Overtime and Tip Misappropriation)**

75. Plaintiff incorporates all allegations contained in the foregoing paragraphs.

76. 29 U.S.C. § 216(b) allows Plaintiff to assert FLSA claims on behalf of herself an all other employees similarly situated. Plaintiff asserts this claim on behalf of herself an all similarly situated employees in the Class defined above, who worked for Defendants at any time from the date three years prior to the date the Complaint was originally filed continuing through the present. All requirements for a collective action are met.

77. 29 U.S.C. § 206 requires Defendants to pay all employees the minimum wage for all hours worked.

78. 29 U.S.C. § 207 requires Defendants to pay all employees at a rate at least equal to one and one half times their regular rate for all hours worked in excess of forty hours per week.

79. Defendants failed to pay Plaintiff and the Class Members the minimum wage or overtime, or any wages whatsoever. In fact Defendants actually required that Plaintiff and Class Members pay them in order to work.

80. Defendants failed to pay Plaintiff or any other dancer minimum wages throughout the relevant period because they misclassified them as independent contractors.

81. The amounts paid to Class Members by customers in relation to dances performed were tips, not wages or services fees. These monies were not the property of Defendants. The entire amounts collected from customers in relation to dances performed by Class Members were not made part of any Defendants' gross receipts at any point.

82. As a result, the amount paid by Plaintiff and Class Members in relation to dances were tips, not wages or service fees, and no part of those amounts can be used to offset Defendants' obligation to pay Class Members or Plaintiff the minimum wages due.

83. Further, no tip credit applies to reduce or offset any minimum wages due. The FLSA only permits an employer to allocate an employee's tips to satisfy a portion of the statutory minimum wage requirement provided that the following conditions are satisfied (1) the employer must inform the tipped employee of the provisions of 29 U.S.C. § 203(m); and (2) tipped employees must retain all the tips received except those tips included in a tip pool among employees who customarily and regularly receive tips.

84. Neither of these conditions is satisfied. Defendants did not inform Plaintiff or Class Members of the provision of 29 U.S.C. § 203(m) nor did Plaintiff and Class Members retain all of their tips. Instead, Defendants maintained that no dancer was ever due any minimum wages due to their classification as independent contractors. The dancers, in turn, were paid nothing.

85. Based on the foregoing, Plaintiff and the Class Members are entitled to the full statutory minimum wages and overtime as set forth in 29 U.S.C. §§ 206 and 207 for all periods in which they worked for Defendants.

86. Defendants' conduct in misclassifying dancers like Plaintiff and Class Members was willful and done to avoid paying their minimum wages, overtime, and other benefits that they were legally entitled to.

87. The FLSA provides that a private civil action may be brought for the payment of federal minimum wages and overtime together with an equal amount in liquidated damages. Moreover, Plaintiff and Class Members are entitled to recover attorneys' fees and costs incurred in enforcing their rights pursuant to 29 U.S.C. § 216(b).

88. 29 U.S.C. § 211(c) provides in relevant part:

> Every employer subject to any provision of this chapter or of any order issued under this chapter shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time, and shall make such reports therefrom to the Administrator as he shall prescribe by regulation or order as necessary or appropriate for the enforcement of the provisions of this chapter or the regulations or orders thereunder.

89. 29 C.F.R. § 516.2 further requires that every employer shall maintain and preserve payroll or other records containing, without limitation, the total hours worked by each employee each workday and total hours worked by each employee during the workweek.

90. To the extent Defendants failed to maintain all records required by the aforementioned statute and regulations, and failed to furnish to Plaintiff and the Class Members comprehensive statements showing the hours they worked during the relevant time period, they also violated the law.

91. When an employer fails to keep accurate records of hours worked by its employees, the rule in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-688 is controlling. That rule states:

> [W]here the employer's records are inaccurate or inadequate. . .an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negate the reasonableness of the inference to be drawn from the employee's evidence. If the employer failed to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

92. The Supreme Court set forth the above standard to avoid allowing the employer to benefit by failing to maintain proper records. Where damages are awarded pursuant to the standard in *Mt. Clemens*, "[t]he employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with. . .the Act." *Id.*

93. Based on the foregoing, on behalf of the Class, Plaintiff seeks unpaid minimum wages and overtime at the required legal rates for all their work during the relevant time period, reimbursement of any tip splits or tip sharing, liquidated damages, attorneys' fees and costs, and any other relief allowed by law.

## VIII.   DAMAGES SOUGHT

94. Plaintiff and Class Members are entitled to recover compensation for the hours they worked for which they were not paid at the federally mandated minimum wage rate.

95. Additionally, Plaintiff and Class Members are entitled to recover their unpaid overtime compensation at the federally mandated premium rate.

96. Plaintiff and Class Members are also entitled to all of the misappropriated tips.

97. Plaintiff and Class Members are also entitled to an amount equal to all of their unpaid wages and misappropriated tips as liquidated damages.

98. Plaintiff and Class Members are entitled to recover their attorney's fees and costs as required by the FLSA.

## IX. JURY DEMAND

99. Plaintiff hereby demands a trial by jury.

## X. PRAYER

100. For these reasons, Plaintiff and Class Members respectfully request that judgment be entered in their favor awarding the following relief:

a. Overtime compensation for all hours worked over forty in a workweek at the applicable time-and-a-half rate;

b. All unpaid wages at the FLSA mandated minimum wage rate;

c. All misappropriated tips;

d. An equal amount of all owed wages as liquidated damages as allowed under the FLSA;

e. Reasonable attorney's fees, costs and expenses of this action as provided by the FLSA; and

f. Such other relief to which Plaintiff and Class Members may be entitled, at law or in equity.

Respectfully submitted,

By: s/Melinda Arbuckle
Melinda Arbuckle
State Bar No. 24080773
3102 Oak Lawn Avenue, Suite 1100
Dallas, Texas 75219
(214) 521-3605 – Telephone
(214) 520-1181 – Facsimile
marbuckl@baronbudd.com

ATTORNEY FOR PLAINTIFF & PUTATIVE
COLLECTIVE ACTION MEMBERS