# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# BEAUMONT DIVISION

| | |
|---|---|
| GABRIELLE ROGERS AND ASHLEY WILBURN, on Behalf of Themselves and On Behalf of All Others Similarly Situated, § § § § § § § § § § § § § § §<br><br>    Plaintiffs,<br><br>V.<br><br>12291 CBW, LLC, RCI DINING SERVICES (BEAUMONT), INC., and RCI HOSPITALITY HOLDINGS, INC.,<br><br>    Defendants. | CIVIL ACTION NO. 1:19-CV-00266<br><br>COLLECTIVE ACTION |

## PLAINTIFFS' BRIEF IN SUPPORT OF PLAINTIFFS' PROPOSED PRE-CERTIFICATION DISCOVERY PLAN

### I.   SUMMARY OF ARGUMENT

Plaintiffs' pre-certification discovery plan is proportional to the needs of this case and is consistent with the principles set forth in the Fifth Circuit's recent decision in *Swales*. Plaintiffs propose a 90-day period for the Parties to conduct pre-certification discovery under the Fair Labor Standards Act ("FLSA"). This pre-certification discovery is in addition to the discovery that has already been completed to date. Attached hereto is Plaintiffs' proposed scheduling order and discovery plan. Plaintiffs respectfully ask the Court to adopt their plan and scheduling order.

Under Plaintiffs' proposal, during the 90 day pre-certification discovery period, the Parties will be allowed to conduct discovery as follows:

    (1) Each side will be allowed one deposition;[1]

---

[1] Defendants have agreed that one deposition per side is appropriate. (*See* Dkt. No. 70 at pg. 3).

1

    (2) Each side will be allowed to serve 15 requests for production;

    (3) Each side will be allowed to serve 10 interrogatories;

    (4) Defendants will produce within 15 days the class list, which shall include the names, dates of work, addresses, telephone numbers and email addresses for all current and former exotic dancers who worked for Defendants at the Temptations Beaumont location or the Temptations Fort Worth location and were classified as independent contractors at any time from June 18, 2016 to the present.

    (5) Defendants will produce within 15 days the class time data (a/k/a "Entertainer Login By Date" information) and expense data (a/k/a "Entertainer Charge Summary") for all current and former exotic dancers who worked for Defendants at the Temptations Beaumont location or the Temptations Fort Worth location and were classified as independent contractors at any time from June 18, 2016 to the present.

Plaintiffs' proposed discovery plan is consistent with *Swales*. In *Swales*, the Fifth Circuit stated that only "preliminary" discovery is needed where the workers "have the same job description" and liability is based on "the same aspect of the job." Those facts exist in this case. Moreover, Plaintiffs' proposed discovery plan is consistent with Rule 26 which provides that discovery should be proportional to the needs of the case. *See* Fed. R. Civ. P. 26.

Finally, Plaintiffs' proposed discovery plan is consistent with the guiding principles set forth by the Supreme Court in *Hoffman La-Roche.* In *Sperling v. Hoffman-La Roche*, 110 S. Ct. 482 (1989), the Supreme Court explained that collective actions permit "plaintiffs the advantage of lower individual costs to vindicate their rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged … activity." *Id*. at 485. A collective action is favored because it serves the legitimate goals of avoiding a multiplicity of duplicative lawsuits and expediting disposition of the action. *Id.*

The discovery sought by Plaintiffs is narrowly tailored to the issue of class certification and Plaintiffs' proposed discovery plan will allow the Court to make a decision with complete information.

## II.  FACTUAL BACKGROUND

As the Court is aware, the Parties have engaged in significant briefing into whether this case is appropriate for certification under the FLSA.  Before doing so, however, the Parties completed preliminary discovery.  Both sides exchanged written discovery, including documents responsive to requests for production, answers to interrogatories, and Rule 26 Disclosures. The Plaintiffs then filed their Motion for Certification on September 25, 2020. (Dkt. 32).  After multiple rounds of briefing, the Court held oral argument on the Motion for Certification on January 6, 2021.

This briefing and discovery confirmed that the Plaintiffs and the Class Members (1) had the same job title, (2) performed the same job duties, (3) worked at the same locations, (4) worked under the same management, (5) were required to follow the same policies and procedures, and (6) were classified as a group as independent contractors.  Indeed, the evidence submitted by Plaintiffs with their Motion for Certification demonstrated that Plaintiffs and the Class Members were "similarly situated" as follows:

- Worked as dancers
- Performed the same duties
- Worked at the same locations
- Were required to follow the same time tracking system
- Were required to follow the same policies and procedures
- Were required to follow the "dance dollars" system set by Defendants

3

- Were required to dance a set rotation set by Defendants

- Were required to work during hours set by Defendants

- Were not paid any wages by Defendants

- Were classified as independent contractors

Following the issuance of the Fifth Circuit's decision *Swales*, the Court asked for additional discovery so that it can make a fully informed decision as to whether certification is appropriate. The Parties then discussed their respective plans with each other but were unable to reach an agreement. Now, Plaintiffs ask that the Court adopt their discovery plan. Plaintiffs' discovery plan is consistent with *Swales* and Rule 26.

### III.     ARGUMENTS AND AUTHORITIES

**A. The *Swales* decision gave "broad, litigation-management discretion" to the Court to determine when a collective action is appropriate. The discovery plan proposed by Plaintiffs will allow the Court to make an informed decision as to whether to certify this case as a collective action.**

It is important to note that while the *Swales* decision did away with the conditional aspect of certification, the Fifth Circuit did not limit the Court's ability to certify a collective action. *See Swales v. KLLM Transport Servs., LLC*, No. Civ. A. 19-60847, 2021 WL 98229 (5th Cir. Jan. 12, 2021). If anything, the Fifth Circuit expanded the Court's authority by stating: "[t]he bottom line is that the district court has broad, litigation-management discretion here" and "it is not captive to *Lusardi* **or any 'certification' test**." *Id.* at *8. The discretion of the Court is only subject to the "the FLSA's 'similarly situated' requirement and the Supreme Court's decision in *Hoffman La-Roche*." *Id.* Thus, the guiding principles set forth by the Supreme Court in *Hoffman La-Roche* are alive and well. In *Hoffman-LaRoche*, the Supreme Court made clear that collective actions provide significant benefits to the judicial system that should be promoted. *See Hoffman-La Roche v. Sperling*, 493 U.S. 165, 170 (1989).

4

> Congress has stated its policy that [] plaintiffs should have the opportunity to proceed collectively. **A collective action allows [] plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity.**
>
> These benefits, however, depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate.

*Id*. (emphasis added).

The benefits of a collective action, as described in *Hoffman-La Roche*, ring loudly in this case. It is undisputed that hundreds of potential Class Members exist who worked as dancers under the same work conditions as the Plaintiffs. Thus, a collective action provides an "efficient resolution in one proceeding of common issues of law and fact" arising out of Defendants' misclassification of their dancer workforce.

It is also important to note that the *Swales* decision did not alter the Supreme Court's analysis in *Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036 (2016). In *Tyson Foods*, a group of employees brought an FLSA claim seeking overtime wages for the time they spent donning and doffing their protective attire prior to and after their shifts. *Id*. at 1042. The employer argued that a class should never have been certified under the FLSA because each individual plaintiff spent different amounts of time donning and doffing protective gear. *Id*. at 1043-44. Therefore, whether and to what extent damages were owed to each individual employee for uncompensated overtime was not a question capable of resolution on a class-wide basis. *Id*. The Supreme Court rejected the employer's argument and affirmed that certification of a collective action under the FLSA was appropriate. *Id*. at 1046-47.

The Supreme Court explained that even if there are individualized issues, representative evidence can be used to prove liability on behalf of a class, stating "[e]vidence of this type is used in various substantive realms of the law." *Id.* at 1046. Further, the Supreme Court stated:

> In many cases, a representative sample is "the only practicable means to collect and present relevant data" establishing a defendant's liability. Manual of Complex Litigation § 11.493, p. 102 (4th ed. 2004). **In a case where representative evidence is relevant in proving a plaintiff's individual claim, that evidence cannot be deemed improper merely because the claim is brought on behalf of a class**. To so hold would ignore the Rules Enabling Act's pellucid instruction that use of the class device cannot "abridge … any substantive right." 28 U.S.C. § 2072(b).

*Id.* at 1046 (emphasis added).

The *Tyson Foods* decision demonstrated that even cases with highly individualized issues as to liability and damages can be certified as collective actions. That is because representative evidence is an established method to present proof in such cases. *See id.*

Moreover, the Fifth Circuit's decision did not alter the case law that existed prior to *Swales* which affirmed certification of a collective action at the decertification stage. Under the prior case law, a motion for decertification was normally filed after discovery was largely complete and the court was tasked with making the determination as to whether the class members were "similarly situated." *See, e.g., Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995); *Maynor v. Dow Chemical Co.*, No. Civ. A. G-07-0504, 2008 WL 2220394, at *5 (S.D. Tex. May 28, 2008). Courts routinely held that were workers were "similarly situated" at the decertification stage when the workers (1) performed similar duties, (2) were paid in a similar manner, and (3) liability could be decided based upon the duties of the class members. *See, e.g., Snively v. Peak Pressure Control, LLC*, 314 F. Supp. 3d 734 (W.D. Tex. 2018) (denying motion for decertification after finding that the class members shared similar factual and employment settings); *Kelly v. Healthcare Servs. Group, Inc.*, 106 F. Supp. 3d 808 (E.D. Tex. 2015) (denying decertification after finding that the

class members had a common job description and were all paid in the same manner); *Maynor v. Dow Chemical Co.*, 671 F. Supp. 2d 902 (S.D. Tex. 2009) (denying decertification of a collective action after determining that liability can be resolved on a collective basis because the class members were required to perform similar training without pay); *Mahoney v. Farmers Ins. Exchange*, No. Civ. A. 4:09-2327, 2011 WL 4458513 (S.D. Tex. Sept. 23, 2011) (denying decertification after finding class members to have worked under common policies and performed similar duties); *Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528 (S.D. Tex. 2008) (denying decertification of a collective action after substantial discovery determined that "the opt-in plaintiffs held the same job title and worked under the exact same job description and supervision hierarchy.").

The Fifth Circuit in *Swales* reiterated that the same standard for determining whether workers are similarly situated still exists to this day, stating that certification should likely be granted when "the plaintiffs all have the same job description and the allegations revolve around the same aspect of that job." *See Swales,* 2021 WL 98229, at *7.  The present case is precisely the case that the Fifth Circuit stated is appropriate for certification.

**B. The Fifth Circuit in *Swales* stated that only "preliminary" discovery is needed where the workers "have the same job description" and liability is based on "the same aspect of the job."  Those facts exist in this case.**

The Fifth Circuit stated that certification can be granted when the "<u>pleadings</u>" and "<u>only preliminary discovery</u>" show that the plaintiff and class members have a similar employment setting, stating:

> For example, [] notice might be justified when the pleadings and only preliminary discovery show sufficient similarity between the plaintiffs' employment situations. In those types of cases, **the plaintiffs all have the same job description**, **and the allegations revolve around the same aspect of that job**.

*Id*. (emphasis added).

7

Prior to Plaintiffs filing their Motion for Certification, both sides had the benefit of discovery. The Parties exchanged written discovery, including requests for production and interrogatories. Along with Plaintiffs' Motion for Certification, Plaintiffs provided 11 exhibits, three declarations, and Defendants' sworn discovery responses. This evidence demonstrated that the Plaintiffs and Class Members are "similarly situated" in every material respect. Indeed, this evidence showed that the Plaintiffs and Class Members performed the same duties, had the same job description (to work as exotic dancers), and worked under the same pay structure. Further, it is undisputed they were required to follow the same policies and procedures, were required to clock-in and clock-out, were required to comply with the rules set by Defendants, were required to work a dance rotation set by Defendants, and they had the same supervisors. Therefore, the *Swales* decision gave broad authority to the Court to certify a collective action and described the facts of this case as the type of case that is appropriate for certification.

In light of the discovery completed to date and the uniform work experiences of the dancers, Plaintiffs' proposed discovery plan strikes the necessary balance for acquiring sufficient information while minimizing the costs to all sides.

**C. Plaintiffs' proposed discovery plan is consistent with *Swales* and will allow the Court to make an informed certification decision under the FLSA.**

Given the briefing and discovery that has already been completed, Plaintiffs propose a 90-day period to conduct additional pre-certification discovery. During that 90 day period, (1) both sides will have the benefit of one deposition each, (2) both sides can serve an additional 15 requests for production (which is in addition to the requests for production already served), and (3) both sides can serve an additional 10 interrogatories related to certification. Plaintiffs also request that the (1) class list, and (2) class time and expense data be produced by Defendants within 15 days of the Court approving Plaintiffs' discovery plan. Within 30 days following the close of the pre-

8

certification discovery period, Plaintiffs will file a supplemental motion for certification under the FLSA. The following describes the factual and legal basis supporting Plaintiffs' discovery plan.

1. ***Both sides agree that one deposition is appropriate.***

The Parties agree that each side should be allowed to take one deposition during the pre-certification stage. Plaintiffs propose that the subjects for the depositions include the following:

    i. Whether the dancers performed the same duties;

    ii. Whether the dancers were subject to the same policies;

    iii. Whether the dancers were subject to the control of the club;

    iv. Whether the dancers were required to follow the same time tracking system;

    v. Whether the dancers were required to pay the same house fees and fines to the club;

    vi. Whether the dancers were required to work a minimum number of shifts;

    vii. Whether the dancers were required to work set rotations by the club;

    viii. Whether the dancers were required to charge prices for dances set by the club;

    ix. Whether the dancers were required to charge prices set by the club in the VIP room;

    x. Whether the dancers were subject to discipline at the club for failing to comply with club policies and procedures;

    xi. Whether dancers were required to give portions of their tips to club employees;

    xii. Whether the dancers were supervised by club managers;

    xiii. Whether the club controlled the advertising, lighting, marketing, music, and club layout;

    xiv. Whether the work experiences of the dancers were the same;

      xv.      Whether the hiring of the dancers was the same process; and

      xvi.     Whether the dancers were subject to the same supervision.

### 2. *Limited written discovery related to class certification should be allowed.*

Plaintiffs propose that both sides be allowed to serve up to 15 requests for production and up to 10 interrogatories. These written discovery requests shall be limited to class certification and whether the liability question as to whether the dancers were employees or independent contractors can be decided on a class basis.

### 3. *Defendants should be required to produce the class list.*

The class list sought by Plaintiffs is the information that includes the names, dates of work, addresses, telephone numbers, and email addresses for each Class Member. Plaintiffs' Counsel intends to conduct discovery as to the similar nature of the work performed by the Class Members and needs the class list for this discovery. Defendants have objected to the production of this information.

Defendants' objections are without merit because even prior to *Swales*, courts found the class list to be discoverable under the FLSA. For example, in *Sedtal v. Genuine Parts Co.,* No. Civ. A. B-08-413, 2009 WL 2216593 (E.D. Tex. Jul. 23, 2009) the court ordered the production of the class list prior to certification in an FLSA case. *Id*. at *7. In *Sedtal*, the court noted that there were a number of cases that have allowed discovery regarding the identities of the class members prior to certification. *Id.* The *Sedtal* Court stated as follows:

> Allowing Plaintiffs to discover this information at this time may help them demonstrate that a sufficient number of similarly situated plaintiffs exist to conditionally certify the action. *See Fei,* 2008 U.S. Dist. LEXIS 33310, at *5, 2008 WL 594768. Conversely, it may underscore inadequacies in the group of potential plaintiffs. *See Detho v. Asia Bilal,* No. H–07–2160, 2008 U.S. Dist. LEXIS 57133, at * 7, 2008 WL 2962821 (S.D. Tex. July 29, 2008) (in a case that Plaintiffs' counsel should recall, conditional certification denied when court ordered defendants to provide plaintiff with identities of employees over

>preceeding three years and plaintiff still could not provide proof that any specific putative class member was interested in joining the suit**). Either way, ordering discovery at this early stage will provide more certainty about the merits of the proposed class at the time certification is considered.**

*Id*.

Similarly, in *Briones v. Kinder Morgan, Inc*., No. Civ. A. 15-2499, 2016 WL 6804862 (S.D. Tex. Nov. 17, 2016), the court provided a detailed analysis as to why the class list is discoverable. The *Briones* Court explained that precertification disclosure of contact information for the potential class members is relevant in determining whether the potential class members have similar claims, facts, and work experiences. Se id. at *4. The *Briones* Court stated as follows:

>the requested information is relevant to the case, claims, or defenses; the named plaintiff had no other way of obtaining the information that was in the hands of the defendant; and a motion to compel was filed prior to the certification stage. *See Yoakum*, 2010 WL 4053956, at *6 (requiring parties to file a motion to compel prior to ordering defendants produce information); *Sedtal*, 2009 WL 2216593, at *7 (granting motion to compel based on the remedial purpose of the FLSA and the court's broad discretion under Rule 26); *Acevedo v. Ace Coffee Bar, Inc.*, 248 F.R.D. 550, 553 (N.D. Ill. 2008) ("provisional certification is not necessarily a prerequisite for conducting limited discovery"); *cf. Detho*, 2008 WL 2962821, at *3 (The court ultimately denied class certification, but only after ordering defendants to provide the identities of former and current employees from the past three years. Despite having this information, plaintiff did not provide any specific putative class member interested in joining the suit.); *Barton v. Pantry, Inc.*, No. 1:04CV00748, 2006 WL 2568462, at *2 (M.D.N.C. Aug. 31, 2006) (ordering limited pre-certification disclosure of names and addresses of present and former employees at the stores where plaintiffs worked, but ruling that the information for employees at other stores not be produced until the court decides on conditional certification); *Knutson*, 254 F.R.D. at 558 (denying plaintiff discovery because plaintiff already had contact with other employees).

*Id*.

In fact, discovery of this information prior to *Swales* was commonplace and this information is even more important following *Swales*. *See, e.g., Bravo v. Keys Prop. Mgmt. Enter., Inc.,* No. Civ. A. 4:11-CV-3966) (S.D. Tex. May 15, 2012) – (Exhibit "1."); *Guan Ming Lin, et al. v. Benihana Nat'l Corp.,* 755 F. Supp. 2d 504 (S.D. N.Y. 2010); *Morden v. T-Mobile USA, Inc.,*

11

No. Civ. A. C05-2112 RSM, 2006 U.S. Dist LEXIS 42047, 2006 WL 1727987 at *6-7 (W.D. Wash. June 22, 2006); *Morales v. Plantworks, Inc.,* No. Civ. A. 05-2349(DC), 2006 U.S. Dist. LEXIS 4267, 2006 WL 278154 at *6 (S.D.N.Y. Feb.1, 2006); *Flores v. Osaka Health Spa, Inc.,* No. Civ. A. 05-962VMKNF, 2006 U.S. Dist. LEXIS 11378, 2006 WL 695675 at *9 (S.D.N.Y. Mar. 16, 2006); *Acevedo v. Ace Coffee Bar, Inc.,* 248 F.R.D. 550, 553-554 (N.D.I11.2008); *Fei v. WestLB AG,* No. Civ. A. 07-8785(HB)(FM), 2008 U.S. Dist. LEXIS 33310, 2008 WL 594768 at*5-6 (S.D.N.Y. Apr. 28, 2008)(citing *Hoffman-La Roche Inc. v. Sperling,* 493 U.S. 165, 170, 110 S. Ct. 482, 107 L.Ed.2d 480 (1989) and other cases for the proposition that conditional certification is not a prerequisite to the turnover of information concerning the identity of potential class members); *Stillman v. Staples, Inc.,* No. Civ. A. 07-849(KSH), 2007 U.S. Dist. LEXIS 58873 at *2-3 (D.N.J. Jul. 30, 2007).

Ultimately, courts have acknowledged that discovery regarding the identities of the Class Members serves an important purpose as it can narrow the issues in dispute and assist the parties in identifying whether the Class Members performed similar duties and were paid in the same manner. This information allows litigants to perform a thorough investigation regarding the scope of the class and the number of people affected. Accordingly, this Court should grant Plaintiffs proposed discovery plan and allow the production of the class list.

**4.** ***Defendants should be required to produce the class time and expense data.***

The Supreme Court in *Tyson Foods* held that when plaintiffs are able to provide a model for calculating the potential damages for each class member, certification is likely appropriate. *Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036, 1046 (2016). In this case, Defendants have the data that can be used by Plaintiffs to calculate how much each Class Member is owed. Specifically, Defendants have the data showing the start time and end time for each day worked by each Class

Member. (*See* Exhibit "2.") This information can be used to calculate how many hours each Class Member worked per week. Additionally, Defendants have the records showing the amounts that the Class Members paid to Defendants for house fees and fines. (*See* Exhibit "3."). This information is needed to calculate the amounts each Class Member could be owed for unpaid wages. This data is readily available to Defendants and can be easily produced. This data also demonstrates that certification is appropriate by showing that damages can be calculated on a class basis.

Following the *Swales* decision, courts have begun ordering defendants to produce similar information as that requested here by Plaintiffs. For example, Judge Bray in the Southern District of Texas in cause number 4:20-cv-2550, *Ozua v. Pro Weld Industrial Servs., LLC* sua sponte ordered the production of the following information:

- Number of employees
- Job classes
- Work schedules
- Pay structure
- Job sites
- Job duties

(Exhibit "4").

The information sought by Plaintiffs is relevant to the issue of certification and will enable the Court to make an informed decision. In *Sperling v. Hoffman-La Roche*, 110 S. Ct. 482 (1989), the Supreme Court explained that collective actions permit "plaintiffs the advantage of lower individual costs to vindicate their rights by the pooling of resources. The judicial system benefits

by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged … activity." *Id*. at 485.

The discovery sought by Plaintiffs is narrowly tailored to the issue of class certification and Plaintiffs' proposed discovery plan will allow the Court to make a decision with complete information.

### D. In *Swales*, the Fifth Circuit stated that the issue for certification is whether liability can be determined on a class basis.

The Fifth Circuit in *Swales* stated that the issue is whether "merits questions can be answered collectively." *Swales,* 2021 WL 98229, at *7. The discovery sought by Plaintiffs will demonstrate that the material facts with respect to each Class Member are the same. Thus, the liability question as to whether the dancers are employees or independent contractors can be resolved on a class basis because the factual circumstances for each dancer are the same.

The discovery sought by Plaintiffs will also allow the Court to evaluate liability on a class basis by addressing these common questions: (1) did the Class Members perform low skilled work indicative of employee status, (2) did Defendants exert control sufficient to be deemed employers, (3) did the Class Members have the ability to control their "profit" or were subject to the control of Defendants, (4) did the Class Members make any material investment (other than their time) in dancing for Defendants, and (5) were the Class Members in business for themselves or required to follow the mandates of Defendants. Given that the discovery sought by Plaintiffs is relevant and proportional to the needs of the case, the Court should grant the Plaintiffs' proposed discovery plan.

## CONCLUSION

Plaintiffs respectfully request that the Court approve Plaintiffs' proposed pre-certification discovery plan allowing for the following:

(1) 90 days to conduct pre-certification discovery with the limitations for discovery as follows:

(2) Each side will be allowed one deposition;

(3) Each side will be allowed to serve 15 requests for production;

(4) Each side will be allowed to serve 10 interrogatories;

(5) Defendants will produce within 15 days the class list, which shall include the names, dates of work, addresses, telephone numbers and email addresses for all current and former exotic dancers who worked for Defendants at the Temptations Beaumont location or the Temptations Fort Worth location and were classified as independent contractors at any time from June 18, 2016 to the present.

(6) Defendants will produce within 15 days the class time data (a/k/a "Entertainer Login By Date" information) and expense data (a/k/a "Entertainer Charge Summary") for all current and former exotic dancers who worked for Defendants at the Temptations Beaumont location or the Temptations Fort Worth location and were classified as independent contractors at any time from June 18, 2016 to the present.

        Respectfully submitted,

        HODGES & FOTY, LLP

        By: /s/ *Don Foty*_____
            Don J. Foty
            Texas Bar No. 24050022
            dfoty@hftrialfirm.com
            4409 Montrose Blvd, Ste. 200
            Houston, Texas 77006
            Telephone: 713-523-0001
            Facsimile:  713-523-1116

            ATTORNEY FOR
            PLAINTIFFS & CLASS MEMBERS

## **CERTIFICATE OF SERVICE**

      I certify that on this February 3, 2021, a true and correct copy of the foregoing instrument was filed through the Court's electronic case filing which will serve a copy of this document electronically on all counsel of record.

                                                                     */s/ Don J. Foty*
                                                                     Don J. Foty