IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| GABRIELLE ROGERS AND ASHLEY WILBURN, on Behalf of Herself and All Others Similarly Situated, | § § § § | |
| *Plaintiff*, | § § | |
| v. | § § | CIVIL ACTION NO. 1:19-cv-00266 |
| 12291 CBW, LLC, RCI DINING SERVICES (BEAUMONT), INC., and RCI HOSPITALITY HOLDINGS, INC., | § § § § § | |
| *Defendants.* | § | |

## DEFENDANTS' RESPONSE TO PLAINTIFFS' BRIEF IN SUPPORT OF PROPOSED PRE-CERTIFCATION DISCOVERY PLAN

Defendants file this Response to Plaintiffs' Brief in Support of Plaintiffs' Proposed Pre-Certification Discovery Plan. (*See* Dkt. No. 71).

### ARGUMENT AND AUTHORITIES

Following, and in light of, the 5th Circuit's opinion in *Swales v. KLLM Transport Servs., L.L.C.*, 985 F.3d 430 (2021), the Court instructed the parties to confer and submit an amended scheduling order to address pre-certification discovery. (*See* January 20, 2021 Minute Entry). On February 3, 2021, Defendants filed their proposed amended scheduling order.[1] (Dkt. No. 70). Plaintiffs declined to participate in preparing a joint submission, and instead submitted their brief together with a proposed order of their own. (Dkt. No. 71, 71-4). Despite this and although the

---

[1] Defendants' proposed scheduling order sets the deadline to add parties for March 1, 2021, to enable Plaintiff Gabrielle Rogers to sue JAI Dining Services (Beaumont), Inc., the entity actually doing business as Temptations Beaumont, rather than the incorrectly named RCI Dining Services (Beaumont), Inc. (*See* Docket No. 70). Defendants continue to offer Plaintiff the opportunity to amend her pleading prior to commencing pre-certification discovery in the interest of judicial economy and at a time when such an amendment would cause no delay. (*See* Dkt. No. 53, pp. 6-7).

parties clearly disagree about the basis for the pre-certification discovery sought, the scope of discovery has more similarities than differences.

As for those differences, this Court should enter the Defendants' proposed order because it is the most consistent with *Swales*. The merits question of dancer classification *is* relevant to certification because it is a pre-condition to Plaintiffs being entitled to relief under the Fair Labor Standards Act ("FLSA"). Production of a Class List at the pre-certification stage is therefore simply an attempt to end-run around the certification process, presents the very hazards *Swales* intended to prevent, and does not further the certification inquiry itself. Production of log-in and charge summary reports for non-parties likewise do not bear on the issue of certification, and merely relate to theoretical damages models for non-parties.

I. **The parties have vastly different readings of *Swales* but agree the focus of pre-certification discovery should be on dancer classification and also largely agree on the scope of written and deposition discovery.**

Plaintiffs argue for a narrow reading of *Swales*, emphasizing the trial court's discretion under *Hoffman La-Roche v. Sperling*, 493 U.S. 165, 170 (1989) to set the scope of discovery and implying that the only constraint on such discretion is the requirement that it be done in view of determining whether Plaintiffs are 'similarly situated.' (Dkt. No. 71, p. 4). This is only half true. "[A] district court should identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of 'employees' is 'similarly situated.'" *Swales*, 985 F.3d at 441. The Fifth Circuit has made clear that the Plaintiffs must satisfy both the 'employee' and 'similarly situated' conditions and the Court must address the classification inquiry—whether a plaintiff is an 'employee'—before considering certification:

> But the merits issue here—whether Plaintiffs were misclassified as independent contractors—resembles the issue of arbitration agreements in *JPMorgan*. Both are potentially dispositive, threshold matters. Just as the existence of a valid arbitration agreement bars an employee from bringing a lawsuit in general, a valid

> independent-contractor classification bars application of the FLSA. The fact that a threshold question is intertwined with a merits question does not itself justify deferring those questions until after notice is sent out. Just as we held it was improper to ignore evidence of the arbitration agreements in *JPMorgan*, it's improper to ignore evidence of other threshold matters, like whether the plaintiffs are "employees" such that they can bring an FLSA claim.

*Id.* If Plaintiffs are not employees, then they are not entitled to proceed as a collective, because they cannot bring an FLSA claim at all. *Id.* at 435 ("The FLSA protects employees (not independent contractors) by establishing maximum work hours, and overtime compensation for work beyond 40 hours per week.").

Ignoring the Fifth Circuit's directive, Plaintiffs erroneously suggest that the inquiry is only whether classification could be answered in a class-wide basis, and not also the classification issue itself. (Dkt. No. 71, p. 14). Despite these vastly different views of what issues the Court must decide in determining whether to certify, the topics the parties seek to address through pre-certification discovery are very similar and tend to address matters bearing on the classification issue:

| **Defendants' Identified Topics** | **Plaintiffs' Identified Topics** |
|---|---|
| (A) The Plaintiffs' schedules and how common or typical those schedules are as compared to other dancers.<br>(B) Whether the Plaintiffs were required to announce when they planned to take time off from performing at Temptations Beaumont or Temptations Fort Worth, and whether the presence or lack of such a requirement was typical as compared to other dancers.<br>(C) The Plaintiffs' work relationship and interaction with the respective club's management and whether those are typical as compared to other dancers.<br>(D) The duration of Plaintiffs' contractual relationship with Temptations Beaumont or Temptations Fort Worth as compared to other dancers.<br>(E) Whether and the extent to which the | i. Whether the dancers performed the same duties;<br>ii. Whether the dancers were subject to the same policies;<br>iii. Whether the dancers were subject to the control of the club;<br>iv. Whether the dancers were required to follow the same time tracking system;<br>v. Whether the dancers were required to pay the same house fees and fines to the club;<br>vi. Whether the dancers were required to work a minimum number of shifts;<br>vii. Whether the dancers were required to work set rotations by the club; |

Plaintiffs danced at other clubs or performed other work for compensation as compared to other dancers.

(F) Whether and the extent to which the Plaintiffs had 'regular' customers and whether Plaintiffs entertained 'regular' customers at clubs other than Temptations Beaumont or Temptations Fort Worth, as compared to other dancers.

(G) Whether and the extent to which the Plaintiffs maintain a social media presence relating to their exotic dancing services, including whether they communicate directly with customers, as compared to other dancers.

(H) The amount of income Plaintiffs earned at places other than Temptations Beaumont or Temptations Fort Worth during their contractual relationship with the club as compared to other dancers.

(I) The Plaintiffs' sources and amount of income earned while dancing at Temptations Beaumont or Temptations Fort Worth as compared to other dancers.

(J) The Plaintiffs' investment in their hair, make-up, work-out routines, elective surgery, and other performance-related expenditures as compared to other dancers.

viii. Whether the dancers were required to charge prices for dances set by the club;

ix. Whether the dancers were required to charge prices set by the club in the VIP room;

x. Whether the dancers were subject to discipline at the club for failing to comply with club policies and procedures;

xi. Whether the dancers were required to give portions of their tips to club employees;

xii. Whether dancers were supervised by club managers;

xiii. Whether the club controlled the advertising, lighting, marketing, music, and club layout;

xiv. Whether the work experiences of the dancers were the same;

xv. Whether the hiring of the dancers was the same process; and

xvi. Whether the dancers were subject to the same supervision.

(Dkt. 70, pp. 2-3; Dkt. No., pp. 8-9).

Defendants likewise do not object to Plaintiffs' proposal that the parties respond to no more than 10 additional interrogatories and 15 requests for production. Plaintiffs themselves readily agree to Defendants' proposal of one deposition per party, although their order uses the vague language "one deposition per side." (Dkt. No. 71, p. 9, 71-4, p. 1). As long as Plaintiffs agree that each of them will be required to sit for deposition,[2] then it appears there is little disagreement about the scope of discovery. However, as addressed below, the notice-style discovery Plaintiffs seek

---

[2] Setting aside the obvious need to depose dancers from both clubs to determine whether they are 'similarly situated,' in light of the suspicious circumstances surrounding Plaintiff Ashley Wilburn's relationship with Temptations Fort Worth, it is particularly important that she be required to appear for deposition. (*See* Dtk. No. 53).

the Court to order along with setting a *Swales* schedule is wholly inappropriate and inconsistent with *Swales* itself.

**II.     Production of a Class List to Plaintiffs would be an end-run around the class certification process, serves no legitimate discovery purpose, and could only be used to contravene the purpose of *Swales*.**

Plaintiffs request for an order requiring Defendants to produce a Class List exceeds the Court's directive to submit a scheduling order and instead surreptitiously seeks to obtain an order compelling production on a prior discovery request. Plaintiffs originally requested and Defendants previously objected to pre-certification production of a class list in May and June of 2020:

> **REQUEST FOR PRODUCTION NO. 11:**
> Please produce the names, last known addresses, all known email addresses, all known telephone numbers, dates of birth, stage name, and dates of work for all Class Members as defined in Plaintiffs' live Complaint.
>
> **RESPONSE:**
> Defendants object to this request because the information sought is not relevant to any party's claims or defenses, and instead consists of requests for class action information in advance of conditional class certification or traditional class action certification. *See In re JPMorgan Chase & Company*, 916 F.3d 494 (5th Cir. 2019). Defendants further object to the request on grounds that it is unduly burdensome and not proportional to the needs of the case. FED. R. CIV. P. 26(a)(1). Defendants further object to the request because it seeks information that invades the privacy interests of performers who are not parties to this lawsuit and who do not want their legal names, domiciles, and contact information disclosed in a public proceeding.

(Exhibit A, Defendants' Responses to Request for Production, pp. 5-6). Those objections were valid then, and they are even more compelling in light of *Swales*.

First, production of the entire Class List is simply disproportional to the size of this case—based on the records now available, the sum total of Plaintiffs' claims altogether—including minimum wage, liquidated damages and return of all house fees—is $14,847.45. (*See* Exhibit B,

Login and House Fee Reports for Rogers; Exhibit C, Login and House Fee Reports for Miller).³

In seeking production of information objected to on proportionality grounds:

> [t]he moving party "may well need to make its own showing of many or all of the proportionality factors, including the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, and the importance of the discovery in resolving the issues." *Samsung Elecs. Am. Inc. v. Yang Kun "Michael" Chung*, 325 F.R.D. 578, 592 (N.D. Tex. 2017).

*Miranda v. Mahard Egg Farm, Inc.*, No. 4:19-CV-00092, 2019 WL 5802047, at *2 (E.D. Tex. Nov. 7, 2019).

    The amount in controversy in this case is very small—so small in fact that this Court could not preside over the matter on the basis of diversity jurisdiction if it did not have subject matter jurisdiction pursuant to the FLSA. *See* 28 U.S.C. § 1332(a) (setting jurisdictional threshold at $75,000). More importantly, the contact information of all dancers at Defendants' clubs has no probative value whatsoever – and it certainly does not "assist in identifying whether the Class Members performed similar duties and were paid in the same manner," as Plaintiffs argue. (Dkt. No. 71, p. 12). Such information can only be gleaned by deposing Defendants representatives or by serving those dancers with subpoenas at the pre-certification stage—something that Plaintiffs have not even requested as part of the scope of discovery. Production of the contact information for every dancer contracting with Defendants during the statutory time period is simply not proportionate to the size of the case nor sufficiently relevant to determining the gateway issues of whether (1) the dancers are employees and (2) if so, whether they are similarly situated, and the information is therefore not discoverable pursuant to Rule 26. *Miranda*, 2019 WL 5802047, at *2.

    Plaintiffs cite heavily to *Briones v. Kinder Morgan, Inc.* to support their contention that production of a class list is appropriate prior to class certification. No. Civ. A. 15-2499, 2016 WL

---

³ There is no record of Ashley Wilburn dancing at any Temptations at any time.

6804862 (S.D. Tex. Nov. 17, 2016). This case was decided in view of the *Lusardi* method for determining conditional collective action, a procedure *Swales* abrogated. Furthermore, *Swales* cautions us to avoid "stirring up unwarranted litigation," especially in a situation like here where the applicability of the FLSA to Plaintiffs is far from certain. 985 F.3d at 435.

Also, *Briones* notes that in the conditional certification context not present here, "many courts have granted limited discovery prior to class certification based primarily on fact-specific situations that mirror the facts in the instant case: the requested information is relevant to the case, claims, or defenses; the named plaintiff had no other way of obtaining the information that was in the hands of the defendant; and a motion to compel was filed prior to the certification stage." *Briones*, 2016 WL 6804862, at *4 (S.D. Tex. Nov. 17, 2016). None of these preconditions are met here.

First, as stated above, the information is not relevant to either of the relevant certification inquiries nor have Plaintiffs attempted to show that it is. Second, unlike *Briones*, Plaintiffs have sworn under oath that they know of and have in fact communicated with other dancers at the clubs. (*See* Dkt. Nos. 32-1, 32-2, ¶ 15) ("I worked closely with other dancers at Temptations and I have talked with them about their work and their classification as independent contractors.") The ability to talk to other dancers is in no way restricted by lack of access to a class list, unlike *Briones* where "plaintiff has been given no access to contact information of other [alleged] employees. 2016 WL 6804862, at *3. Lastly, submission of a *Swales* scheduling order is not a motion to compel. Plaintiffs have not filed a motion to compel prior to moving for class certification or at any point in this litigation.

This Court should deny Plaintiffs' request for a Class List until and unless they demonstrate their entitlement to class certification pursuant to *Swales.*

**III.     Production of non-plaintiffs' login reports and charge summaries are not relevant to certification or to plaintiffs' claims.**

Production of class wide data relating to dancer login reports and charge summaries are likewise inappropriate for the same reasons stated in Section II, above. However, they are also completely irrelevant to either of the inquiries at hand – whether the dancers are employees and if so, whether they are similarly situated. Plaintiffs argue that "Defendants have the data showing the start time and end time worked by each Class Member," and that such information can show "damages can be calculated on a class basis." (Dkt. No. 71, pp. 12-13). Setting aside the veracity of these statements, which Defendants challenge, they highlight Plaintiffs' admission and the unavoidable fact that this information relates to damages, not whether Plaintiffs were misclassified or whether they are similarly situated. In fact, in the very same brief, Plaintiffs cite to *Tyson Foods, Inc. v. Bouaphakeao*, 136 S.Ct. 1036, 1043-47 (2016), for the proposition that individualized damages questions do not defeat class certification. Furthermore, non-party dancers don't have damages to be discovered because they are not parties. Their login-sheets and charge summaries have no probative value as to plaintiffs. There is no legitimate purpose for this information, and Plaintiffs' request for the information should be denied.

## CONCLUSION

12291 CBW, LLC, RCI Dining Services (Beaumont), Inc and RCI Hospitality Holdings, Inc., request that this Court enter the proposed scheduling order provided to the Court on February 3, 2021. (Dkt. No. 70).

Date: February 19, 2021

                                          Respectfully submitted,

                                          WALLACE & ALLEN, LLP

                                          */s/ Benjamin W. Allen*
                                          Casey T. Wallace
                                          State Bar No. 00795827
                                          Benjamin W. Allen
                                          State Bar No. 24069288
                                          440 Louisiana St., Suite 1500
                                          Houston, Texas 77002
                                          Tel: (713) 227-1744
                                          Fax: (713) 227-0104
                                          cwallace@wallaceallen.com
                                          ballen@wallaceallen.com

                                          **ATTORNEYS FOR DEFENDANTS**

## **CERTIFICATE OF SERVICE**

I certify that I served this document on all counsel of record in accordance with the Federal Rules of Civil Procedure on February 19, 2021.

Don J. Foty
Hodges & Foty, LLP
4409 Montrose Blvd., Ste. 200
Houston, Texas 77006
Tel: (713) 523-0001
Fax: (713) 523-1116
dfoty@hftrialfirm.com
**ATTORNEY FOR PLAINTIFF**

*/s/ Benjamin W. Allen*
Benjamin W. Allen