# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
### BEAUMONT DIVISION

| | | |
|---|---|---|
| **GABRIELLE ROGERS AND ASHLEY WILBURN, on Behalf of Themselves and On Behalf of All Others Similarly Situated,** | § § § § § | |
| **Plaintiffs,** | § § | **CIVIL ACTION NO. 1:19-CV-00266** |
| **V.** | § § | |
| **12291 CBW, LLC, RCI DINING SERVICES (BEAUMONT), INC., and RCI HOSPITALITY HOLDINGS, INC.,** | § § § § | |
| **Defendants.** | § | |

---

## PLAINTIFFS' MOTION FOR CERTIFICATION UNDER THE FAIR LABOR STANDARDS ACT

---

Filed by:

Don J. Foty
State Bar No. 24050022
HODGES & FOTY, LLP
4409 Montrose Blvd., Suite 200
Houston, Texas 77006
Telephone: 713-523-0001
Facsimile:  713-523-1116
dfoty@hftrialfirm.com

i

# TABLE OF CONTENTS

I.    SUMMARY OF ARGUMENT ........................................................................1

II.   BACKGROUND...........................................................................................2

II.   PRE-NOTICE DISCOVERY STAGE ............................................................3

III.  ARGUMENTS AND AUTHORITIES ..........................................................13

  A.  Based on the holding in *Swales*, the Court should grant this Motion for Certification and authorize notice to the Class Members. ..........................................................14

  B.  Nearly every court in the Fifth Circuit faced with the issue of whether to certify a collective action following *Swales* has granted certification...........................................................17

  C.  Under similar facts, courts across the country have granted certification to dancers seeking unpaid wages under the FLSA as a result of being misclassified as independent contractors ......................................................................................................................20

  D.  It appears that Defendants are not disputing that the Plaintiffs and Class Members are "similarly situated."   Instead, Defendants wrongly believe that certification should be denied because the Court must first find Defendants liable as an employer.  Defendants' argument improperly "places the cart before the horse.". ..............................................22

  E.  Assuming, *arguendo*, that the Court should make a liability finding at this stage, the overwhelming evidence is that the dancers are employees under the FLSA....................24

V.    CONCLUSION ...........................................................................................30

## TABLE OF AUTHORITIES

Page(s)

Cases

*Badon v. Berry's Reliable Resource, LLC*,
    2021 WL 933033 (E.D. La. Mar. 11, 2021).................................................................19, 22

*Barrintine v. Ark. Freight Sys.*,
    450 U.S. 728 (1981)........................................................................................................ 4

*Brock v. Mr. W Fireworks, Inc.*,
    814 F.2d 1042 (5th Cir. 1987)..............................................................................27, 30, 31

*D'Antuono v. C&G of Groton, Inc.*,
    2011 WL 5878045 (D. Conn. Nov. 23, 2011)..................................................................... 24

*De Angelis v. Nat'l Entm't Grp., LLC*,
    2019 WL 6715974 (S.D. Ohio Dec. 10, 2019).................................................................... 23

*Degidio v. Crazy Horse Saloon & Rest., Inc*,
    2015 WL 5834280 ................................................................................................23, 24, 27

*Eisen v. Carlisle & Jacqueline*,
    417 U.S. 156 (1974)....................................................................................................... 25

*Halferty v. Pulse Drug Co., Inc.*,
    821 F.2d 261 (5th Cir. 1987).......................................................................................... 31

*Harrell v. Diamond A Entm't, Inc.*,
    992 F. Supp. 1343 (M.D. Fla. 1997)................................................................................ 4

*Hart v. Rick's Cabaret Int'l, Inc. and Peregrine Ent. Inc.*,
    967 F.Supp.2d 901 (S.D.N.Y. 2013) ..................................................................... Passim

*Herman v. Express Sixty-Minutes Delivery Serv., Inc.*,
    161 F.3d 299 (5th Cir. 1998).......................................................................................... 26

*Hernandez v. Pritchard Indus. (Southwest), LLC*,
    2021 WL 1146005 (W.D. Tex. Mar. 25, 2021)..............................................................19, 22

*In re Penthouse Exec. Club Comp. Litig.*,
    2010 WL 4340255 (S.D.N.Y. Oct. 27, 2010) .................................................................... 24

*Itzep v. Target Corp.*,
    543 F. Supp. 2d 646 (W.D. Tex. 2008)............................................................................ 27

*Jones v. Shac LLC*,
    2019 WL 4246681 (D. Nev. Sept. 6, 2019) ...................................................................... 27

*Karna v. BP Corp. N. Am., Inc.*,
    2013 WL 1155485 (S.D. Tex. Mar. 19, 2013) ................................................................... 30

*Kesley v. Entm't U.S.A. Inc.*,
    67 F. Supp. 3d 1061 (D. Ariz. 2014) ............................................................................... 23

*Lusardi v. Xerox Corp.*,
    118 F.R.D. 351 (D.N.J. 1987) ........................................................................................ 16

*Martin v. Circle C Invs., Inc.*,
    1991 WL 338239 (W.D. Tex. Mar. 27, 1991).................................................................... 32

*McLaughlin v. Seafood, Inc.*,
    687 F.2d (5th Cir. 1989)................................................................................................ 31

iii

*Miller v. Mackey Intern., Inc.*,
  452 F.2d 424 (5th 1971)..............................................................................25, 26
*Mooney v. Aramco Servs. Co.*,
  54 F.3d 1207 (5th Cir. 1995) ................................................................................ 16
*Nesselrodte v. Underground Casino & Lounge, LLC*,
  2012 WL 4378163 (N.D.W. Va. Sept. 25, 2012) ................................................. 24
*Pereira v. Foot Locker, Inc.*,
  261 F.R.D. 60 (E.D. Pa. 2009) ............................................................................. 26
*Reich v. Circle C. Investments, Inc.*,
  998 F.2d 324 (5th Cir. 1993) ........................................................................ Passim
*Reich v. Priba Corp.*,
  890 F. Supp. 586 (N.D. Tex. 1995) ........................................................................ 4
*Robicheaux v. Radcliff Material, Inc.*,
  697 F.2d 662 (5th Cir. 1983) ............................................................................... 32
*Rosebar v. CSWS, LLC*, No. 18 C,
  2020 WL 43015 (N.D. Ill. Jan. 3, 2020) .............................................................. 23
*Sandoz v. Cingular Wireless, LLC*,
  553 F.3d 913 (5th Cir. 2008) ................................................................................. 4
*Segovia v. Fuelco Energy, LLC*,
  2021 WL 2187956 (W.D. Tex. May 28, 2021) ..................................................... 20
*Shaw v. Set Enterprises, Inc.*,
  241 F. Supp. 3d 1318 (S.D. Fla. 2017) ................................................................ 27
*Swales v. KLLM Transport Servs., LLC*,
  985 F.3d 430 (5th Cir. 2021) ........................................................................ Passim
*Thompson v. Linda And A., Inc.*,
  779 F. Supp. 2d 139 (D.D.C. 2011) ..................................................................... 27
*United States Parole Commission v. Geraghty*,
  445 U.S. 396 (1980) ............................................................................................. 25
*Valentino v. Carter-Wallace, Inc.*,
  97 F.3d 1227 (9th Cir. 1996) ............................................................................... 25
*Vaughn v. Document Grp. Inc.*,
  250 F. Supp. 3d 236 (S.D. Tex. 2017) ................................................................. 26
*Verma v. 3001 Castor, Inc.*,
  937 F.3d 221 (3d Cir. 2019) ................................................................................ 27
*Woods v. Club Cabaret, Inc.*,
  140 F. Supp. 3d 775 (C.D. Ill. 2015) ................................................................... 23
*Young v. Energy Drilling Co.*,
  2021 WL 1550343 (S.D. Tex. Apr. 20, 2021)................................................. 19, 21
*Zheng v. Liberty Apparel Co.*,
  355 F.3d 61 (2d Cir. 2003) .................................................................................. 27

Statutes

29 U.S.C. § 216.................................................................................................... 16
§ 216(b) ............................................................................................................... 16

Rules

iv

Fed. R. Civ. P. 23 .................................................................................................................. 16

Other Authorities

Bare Minimum: Stripping Pay for Independent Contractors in the Share Economy,
    23 Wm. & Mary J. Women & L. 249 (2017) ......................................................... 27

# I.   <u>SUMMARY OF ARGUMENT</u>

Class certification under the Fair Labor Standards Act ("FLSA") is appropriate in this case for several reasons.  First, during the pre-notice discovery phase, the witnesses that were deposed testified that there are no material differences amongst the Class Members.  The witnesses testified that the Class Members performed the same job duties at Temptations, were required to pay the same "House Fees" to Defendants, clocked-in using the same time clock system, earned money primarily from tips from customers, and were all classified as independent contractors.  There are hundreds of other dancers in the Class and the evidence establishes that these Class Members are "similarly situated" in every material respect.

Second, based upon the Fifth Circuit's decision in *Swales*, certification is appropriate because liability can be resolved on a class basis. *See Swales v. KLLM Transport Servs., LLC*, 985 F.3d 430 (5th Cir. 2021). The witnesses who were deposed also testified that the Class Members were supervised by the managers at Temptations, were subject to the same hiring requirements, and were subject to the same policies and procedures.   In fact, Defendants' Corporate Representative testified in his deposition that he could not identify any distinction between the dancers at Temptations and the dancers in *Hart v. Rick's Cabaret Int'l, Inc. and Peregrine Ent. Inc.*, 967 F.Supp.2d 901 (S.D.N.Y. 2013), where the court held that the dancers were employees under the FLSA and not independent contractors.  The testimony from Defendants' Corporate Representative is not surprising because the law has been clear for approximately 30 years that the Plaintiffs and the Class Members are employees under the FLSA.[1]

---

[1] *See, e.g., Reich v. Circle C. Investments, Inc.*, 998 F.2d 324 (5th Cir. 1993) (holding that dancers are employees under the FLSA); *Reich v. Priba Corp.*, 890 F. Supp. 586 (N.D. Tex. 1995) (same holding); *Harrell v. Diamond A Entm't, Inc.*, 992 F. Supp. 1343 (M.D. Fla. 1997) (same holding); *Morse v. Mer Corp.*, 1:08-CV-1389-WTL-JMS, 2010 WL 2346334 (S.D. Ind. June 4, 2010).

Third, certification will result in an efficient resolution of this case. There are approximately 800 Class Members. Class certification will result in the claims of the Class Members being resolved in one proceeding, rather than burdening the Court with multiple repeated lawsuits addressing the same facts and legal issues, especially because Defendants' misclassification policy is the same for ALL Class Members.

Finally, as each day passes, the statute of limitations continues to run on each of the Class Members' claims. *See, e.g., Sandoz v. Cingular Wireless, LLC*, 553 F.3d 913, 916-17 (5th Cir. 2008). As such, notice to the Class Members is appropriate to effectuate the policies of the FLSA and to ensure that the claims of the Class Members are properly preserved. *See Barrintine v. Ark. Freight Sys.*, 450 U.S. 728, 739 (1981). Thus, the sole question this Motion presents is whether the Class Members should now be given notice and an opportunity to participate in this case. The answer is clearly "yes." Accordingly, the Court grant this Motion for Certification.

## II.   **BACKGROUND**

Defendant RCI Hospitality Holdings, Inc. (known as "Ricks Cabaret") is a publicly traded company that owns and operates a variety of businesses in the adult entertainment industry, including adult entertainment nightclubs.[2] RCI operates its adult entertainment nightclubs through several brands that it claims "target many different demographics of customers by providing a unique, quality entertainment environment."[3] Temptations is one such brand.[4] Temptations operates a Forth Worth location and a Beaumont location.

In both locations, the dancers at Temptations perform the same duties. Indeed, the dancers

---

[2] *See* Ex. "11-C" at pgs. 1, 5.

[3] *Id*.

[4] *Id.*

at Temptations are hired to do one thing - dance and entertain customers.[5]   In fact, the dancers provide the very service that customers pay for and are the entertainment sought by the customers. There is no reasonable dispute that the dancers constitute the workforce without which Temptations could not provide its services to customers.

However, the dancers at Temptations are universally misclassified by Defendants as independent contractors and not as employees.[6] As a result of being labeled as independent contractors, the dancers (1) are not paid wages, (2) are required to pay Defendants' "House Fees," and (3) are required to give portions of their tips to employees of Defendants who work in positions that normally do not receive tips.[7]   Defendants' illegal misclassification policy has existed for years.  Despite the law in the Fifth Circuit being settled for approximately 30 years that dancers are employees, Defendants have simply refused to comply with the law.  This lawsuit is designed to remedy Defendants' illegal conduct.

## III.   PRE-NOTICE DISCOVERY STAGE

On March 15, 2021, this Court entered its Pre-Notice Scheduling Order. (Dkt. 76).  In that order, the Court allowed 90 days to complete a limited number of depositions prior to the Court ruling on the Plaintiffs' Motion for Certification of a Collective Action. (*Id.*)  During the pre-notice discovery stage, Plaintiffs' Counsel deposed three witnesses: (1) Ed Anakar – the Corporate Representative for Defendants, (2) Leslee Smith – a current dancer and friend of the managers at the Temptations in Beaumont, and (3) Justin Waymire – the Direct of Technology for Defendants.

---

[5] Ex. "12" - Defendants' Answers to Interrogatory Nos. 11, 15.

[6] Ex. "11-C" at pg. 11; Ex. "12," at Answer to Interrogatory No. 16 (no dancers were employees); Defendants' Answer (Dkt. 27), at ¶¶ 28, 38.

[7] Exs. "4" & "5" at ¶¶ 3-5, 10-12; Ex. "6" at ¶¶ 2-4, 6-8;  Exs. "7" to "10" at ¶¶  6-8; Ex. "11-C" at pg. 9, 11; Defendants' Answer (Dkt. 27) at ¶¶ 28, 30, 38, 40 (admitting that Rogers and Wilburn were classified as independent contractors, not paid wages, and required to pay a house fee per shift worked); Ex. "12" at Answer to Interrogatory No. 13 (Plaintiffs were required to pay house fees set by Defendants), and Answer to Interrogatory No. 16 (no dancers were employees).

These witnesses admitted that the Plaintiffs and the Class Members were subject to the same work conditions and there are no material differences between them.   The key testimony from each witness who was deposed is listed below:

1. **Leslee Smith – Current Dancer and Friend of the Managers at the Temptations in Beaumont**

Ms. Smith was chosen as a witness by Defendants.  Ms. Smith is a current dancer who was approached by the managers at the Temptations in Beaumont to testify on behalf of the club. (Ex "1" – Deposition of Leslee Smith at pages 125:24 to 126:15).  Although she was carefully selected by Defendants, Ms. Smith agreed that there are no material differences amongst the Class Members.   Specifically, the job duties, policies/procedures, compensation, house fees, and classification of the dancers are the same.  The following is her key testimony.

a. *Ms. Smith testified that all dancers perform the <u>same job duties</u>.*

22   Q.   But what separates Temptations from being a
23   regular bar is the fact that Temptations has dancers?
24      A.   Correct.
25      Q.   And the dancers provide the entertainment?
1    A.   Yes.
**2      Q.   Okay.  And Temptations would not be able to**
**3    provide that entertainment without the dancers?**
**4      A.   Yeah.**

(Ex. "1" at pages 84:22 to 85:4) (emphasis added).

10     So your job, your primary job is to entertain
11   the customers; is that correct?
12      A.   Yeah.  Yes.
**13      Q.   That's the same as all the other dancers do;**
**14   is that correct?**
**15      A.   <u>Yes.</u>**

(*Id*. at page 59:10 to 59:15) (emphasis added).

      **b.** ***Ms. Smith testified that <u>all dancers</u> primarily earn money from tips by customers.***

10    So the main way you make money is tips from
11  customers?
12    A.  Yes.  Yes.
**13    Q.  Okay.  And that's the way all other dancers**
**14  make money; is that correct?**
**15    A.  <u>Yes.</u>**

(*Id*. at page 58:10 to 58:15) (emphasis added).

      **c.** ***Ms. Smith testified <u>all dancers</u> are required to follow the same policies and procedures while working at Temptations.***

8   Q.   And I think you said these are the same rules
 9  that other dancers have to follow as well at Temptations
10  Beaumont, correct?
11    A.  I would assume so.
12    Q.  Okay.  All right.  Do you agree that all the
13  dancers do the same work at Temptations Beaumont, which
14  is to entertain customers and dance at the club?
16    A.  Yeah.
17    Q.  Do you agree that they all have
18  to follow the same house rules?
**19    A.  <u>Yeah</u>.  You have to have some kind of structure**
**20  when you have a facility, you know, full of people that**
**21  are working together**.  You have to have structure.

(*Id*. at page 121:8 to 121:21) (emphasis added).

      **d.** ***Ms. Smith explained that she is not aware of any dancer operating an independent business.***

12  Can you tell me any dancer who has a business
13  card?
14    A.  Not that I know of.
15    Q.  All right.  Can you tell me any dancer that
16  has employees that they pay wages to?
17    A.  I don't have a clue.
18    Q.  Okay.  Can you tell me any dancer that rents
19  office space?
20    A.  No, sir, I don't -- I can't.

21      Q.   Okay.  Do you know of any?  Do you know of any
22   dancer --
23      A.   I don't.
24      Q.   -- that has employees, rents office space, or
25   has a business card?
 1      A.   **I do not know of any.**

(*Id.* at pages 107:12 to 108:1) (emphasis added).

       **e.**   ***Ms. Smith testified that she is not aware of any dancer being paid wages by Temptations.***

20   Q.   Do any dancers get paid for their time spent
21   working at the club?
22      A.   By -- from the club?
23      Q.   Yes.
**24      A.   Not that I'm aware of.**

(*Id.* at page 113:20 to 113:24) (emphasis added).

       **f.**   ***Ms. Smith testified that <u>all dancers</u> are required to pay the house fees to Temptations.***

15   Q.   Okay.  Do all of the dancers have to pay the
16   house fees?
17      A.   It's not really -- I mean, they call it a
18   house fee, but, really, it's a utilization fee for the
19   entertainer to utilize the facility.
20      Q.   Yeah.
**21      A.   So, yeah, <u>we have to pay it</u>.**

(*Id.* at page 115:15 to 115:21) (emphasis added).

       **g.**   ***Ms. Smith testified that she is aware that <u>all dancers</u> at Temptations are classified as independent contractors.***

25   Q.   Okay.  So, to your knowledge, all dancers are
 1   classified as independent contractors?
 2      A.   **<u>Yes</u>**.

(*Id.* at pages 113:25 to 114:2) (emphasis added).

      **h.** ***Ms. Smith stated that she was unaware of any differences amongst the dancers.***

21  Q.  Can you identify any distinction in terms of
22  what you do and the rules you have to follow between you
23  and any other dancer?
25    A.  I mean, we all are there and expected to act
 1  accordingly to the contract that we sign.
 2    Q.  Okay.  So the answer is you
 3  can't identify any distinction, you don't know?
 5    A.  **<u>No.  I mean, I cannot identify anything</u>** that,
 6  you know, distracts from what we're supposed to be doing
 7  from the contract that we signed.  We signed a contract,
 8  and we're expected to, you know, act accordingly.

 (*Id*. at pages 123:21 to 124:8) (emphasis added).

   **2.**  <u>**Justin Waymire – Director of Technology for Defendants**</u>

      Mr. Waymire is a current employee and the Director of Technology for Defendants.  He

testified that the dancers at Temptations use the same time clock system as the employees

(waitresses and bartenders) of Temptations.  He testified that all dancers clock in and clock out

using this system called "Clubtrax."

 5  Q.  Okay.  Do the dancers clock in and clock out
 6  using Clubtrax?
 7    A.  Specifically, I wouldn't be able to answer
 8  that.  I'm not at the club.
 **9    Q.  To your knowledge how do they clock in and**
**10  clock out?**
**11    A.  To my knowledge in Clubtrax.**

(Ex. "2" – Deposition of Justin Waymire, at page 36:5 to 36:11) (emphasis added).

**19  Q.  Okay.  All right.  Does every club use**
**20  Clubtrax?**
**21    A.  <u>Yes.</u>**

(*Id*. at page 45:19 to 45:21) (emphasis added).

13  Q.  Okay.  The Clubtrax is the system that the
14  waitresses and bartenders use to clock in and clock out,

15  correct?
**16      A.  To my knowledge.**

(*Id*. at page 54:13 to 54:16) (emphasis added).

### 3.  <u>Ed Anakar – Corporate Representative for Defendants</u>

Ed Anakar was selected as the 30(b)(6) representative for the Defendants.  He testified that all dancers at Temptations perform the same duties, pay house fees, clock in and clock out using the same time clock system, are supervised by the managers of Temptations,  and are classified the same – as independent contractors.  Moreover, he was unable to identify any distinction between the Plaintiffs and any other dancer at Temptations.  Further, Mr. Anakar was previously designated at the Corporate Representative for Defendant RCI in the case of *Hart v. Rick's Cabaret Int'l, Inc. and Peregrine Ent. Inc*., 967 F.Supp.2d 901 (S.D.N.Y. 2013), where the court held that the dancers were employees under the FLSA and not independent contractors.  Mr. Anakar admitted that he was unable to identify any material distinction between the dancers at Temptations and those dancers in the *Hart/Peregrine* case.  His key testimony is reproduced below:

**a.  *Mr. Anakar testified that the dancers perform the <u>same duties</u> at Temptations*.**

23   Are you aware of any dancer who did
24   that, who did not actually dance at the club?
25          MR. ALLEN:  Object to form.
 1          Don, you mean a dancer who paid a house
 2   fee and came to the club and didn't dance there?
 3          MR. FOTY:  Yeah.
 4          **THE WITNESS:  <u>No, I'm not aware of any</u>.**

(Ex. "3" - Deposition of Ed Anakar at pages 152:23 to 153:4) (emphasis added).

14   Q.   All right.  Do the dancers dance in a
15   rotation on stage?
16      A.   Do they dance a rotation?
17      Q.   Yes.
**18      A.   They dance -- they do perform on stage, if**
**19   that's what you're asking, <u>yes.</u>**

8

(*Id.* at page 85:14 to 85:24) (emphasis added).

       **b.**  *Mr. Anakar testified that he was unaware of any dancer who was not required to pay house fees.*

  5  Q.  Are you aware of any -- any dancer who's
  6  never paid a facility usage fee?  Are you aware of any?
  7    A.  Am I aware of any that don't have to pay --
  8  no.  I don't know any of the dancers and either entity
  9  personally, so I don't know what they -- you know, what
10  any of them --
11    Q.  You don't know --
12    A.  -- does.  No, I don't know.
13    Q.  Okay.
**14**    **A.**  <u>**I'm not aware**</u>.

(*Id.* at page 152:5 to 152:14) (emphasis added).

       **c.**  *Mr. Anakar testified that the managers oversee the operations of Temptations and enforce the policies and procedures of the club.*

18  Q.  All right.  Are the general managers
19  responsible for the overall operations of the club?
**20**    **A.**  <u>**Yes, sir.**</u>

(*Id.* at page 59:18 to 59:20) (emphasis added).

24  Q.  Okay.  To make sure it's running smoothly?
25    A.  Correct.
  1    Q.  And to enforce any policies and procedures
  2  that exist, correct?
  3    A.  To make sure it's -- it's -- it's operating
  4  within the law.
  **5**    **Q.**  **And to enforce any policies and procedures,**
  **6**  **correct?**
  **7**    **A.**  **Whatever legal policies there are, <u>yes</u>.**

(*Id.* at pages 60:24 to 61:7) (emphasis added).

     **d.**   ***Mr. Anakar testified that <u>all dancers</u> clock in and clock out using the same time clock system (Clubtrax).***

4   Q.    Are there any dancers that work at
5   Temptations in Beaumont or Temptations Fort Worth that
6   don't log in or log out using Clubtrax?
**8**         **THE WITNESS:  <u>I don't believe so.</u>**

(*Id*. at page 73:4 to 73:12) (emphasis added).

     **e.**   ***Mr. Anakar admitted that he was unaware of any distinction between the Plaintiffs and the Class Members.***

25   Q.   (BY MR. FOTY)  Okay.  And I'm asking you do
1   you know of any -- do you know of any specific
2   difference between Gabrielle Rogers and any other
3   dancer?
5        THE WITNESS:  I don't know Gabrielle
6   Rogers personally, so I wouldn't know.
7    Q.   (BY MR. FOTY)  Okay.  Do you know any
8   specific difference between Ashley Wilburn and any other
9   dancer?
11        THE WITNESS:  I'm sorry.  Who again?
12   Wil -- Wilburn?
13   Q.   (BY MR. FOTY)  Ashley --
14   A.    Ashley Wilburn?
15   Q.    Yeah.
**16**   **A.**    **<u>No, sir</u>, I -- you know, I don't know her**
**17**   **personally.**

(*Id*. at pages 160:25 to 161:17) (emphasis added).

     **f.**   ***Mr. Anakar admitted that <u>all dancers</u> are classified the same – as independent contractors.***

**6**   **All right.  Okay.  You would agree that all**
**7**   **dancers at Temptations Fort Worth and Temptations**
**8**   **Beaumont -- they're all classified as independent**
**9**   **contractors?**
10    A.    That all dancers that work at Beaumont are
11   classified independent contractors and all dancers at
12   Temptations Fort Worth are classified as independent
13   contractors?  **<u>Yes</u>**.

14   Q.   Okay.  There are no dancers that are
15  classified as employees?
16   A.   <u>Not that I'm aware of, no.</u>
17   Q.   Okay.  Are you aware of any dancers that get
18  paid wages by Temptations Beaumont or Temptations Fort
19  Worth?
20   A.   <u>No, I'm not aware of any.</u>

(*Id*. at page 151:6 to 151:20) (emphasis added).

       *g.*  *Mr. Anakar testified that he was unaware of any difference between the dancers at Temptations and those dancers that were found to be employees in the Hart/Peregrine case.*

1   Q.   Okay.  In those six or seven times that you
2  were deposed, were any of those cases involving dancers?
3   A.   Yes, one of them did involve dancers.
4   Q.   One of them did involve a dancer?
5   A.   Yes.
6   Q.   Okay.  What case was that?
7   **A.   It was a case against <u>Peregrine Enterprises</u>**.
8   Q.   It was a case against Peregrine Enterprises?
9   A.   Yeah.  Peregrine was the entity name.  I
10  believe it's Peregrine Enterprises, Inc.  I'm not -- you
11  know, it's been -- it's been a long time.  It's been
12  over ten years.
13   **Q.   Okay.  What was the name of the club?**
14   **A.   <u>Rick's Cabaret</u>.**
15   Q.   Okay.  All right.  And I take it there was a
16  dancer that worked for Rick's Cabaret who alleged that
17  she was an employee under the Fair Labor Standards Act?
18   A.   That is correct.

(*Id*. at page 6:1 to 6:18) (emphasis added).

23   **Q.   Okay.  Why were you deposed in that case?**
24   **A.   <u>Because I was the corporate rep, I believe</u>.**
25   Q.   Okay.
1   A.   I would have to go back and look.  I -- I
2  believe I was the corporate rep.
3   Q.   Okay.  So you were designated to testify
4  about certain topics related to Rick's Cabaret?
5   A.   Correct.

6   Q.   Just like you're doing in this case?
7   A.   Correct.

(*Id*. at pages 6:23 to 7:7) (emphasis added).

19   Q.   Do you know of any difference between the way
20   the dancers were treated in the Peregrine case and the
21   way the dancers at Temptations Beaumont and Temptations
22   Fort Worth are treated?
24        THE WITNESS:  Do you want me to answer
25   or -- Ben?
1    Q.   (BY MR. FOTY)  Do you know of any difference?
2   If you're saying, "I don't know," tell me "I don't
3   know."
6        THE WITNESS:  Yeah.  I mean, no, it's --
7   I don't think at the time of -- of that lawsuit -- that
8   was such a long time ago.  There might not have been an
9   agreement -- a license agreement.  That's the only thing
10  I would know.
11   Q.   (BY MR. FOTY)  Okay.  Anything else?
13        THE WITNESS:  **I already answered I don't**
14  **know.**

(*Id*. at pages 169:19 to 170:14) (emphasis added).

Again, the dancers in the *Peregrine* case (where Mr. Anakar testified as the corporate

representative) were found to be employees under the FLSA and not independent contractors. *See*

*Hart v. Rick's Cabaret Int'l, Inc. and Peregrine Ent. Inc.*, 967 F.Supp.2d 901 (S.D.N.Y. 2013).

Despite being found liable, Defendants never changed their policy of illegally classifying the

dancers as independent contactors.

   **4.   Summary of Deposition Testimony**

Therefore, the testimony from the three witnesses who were deposed during the pre-notice

stage establish that there are no material differences between the Plaintiffs and Class Members.

The Class Members (1) perform the same job duties, (2) are all required to pay house fees, (3) are

supervised by the managers at Temptations, (4) follow the same policies and procedures, (5) clock

in and clock out using the same time clock system, (6) are subject to the same level of control, (7) receive compensation in the form of tips from customers, (8) are not paid wages by Defendants, and (9) are all classified (illegally) as independent contractors.  Under these facts, the Court should find the dancers in the Class "similarly situated" under the FLSA and authorize notice to these Class Members.

### 5. <u>Declarations from Dancers</u>

In addition to the deposition testimony, attached as Exhibits "4" to "10" to this Motion are seven declarations from dancers at the Temptations in Beaumont and Fort Worth. (*See* Exs. "4" to "10").  These declarations explain that the dancers perform the same job duties – to dance and entertain customers.[8]  They describe the process for how they were hired by the managers at Temptations,[9] the policies they were required to follow,[10] and that they were supervised by the managers at Temptations.[11]  These declarations are consistent with the deposition testimony and further support that the Plaintiffs and the Class Members are "similarly situated" under the FLSA.

### IV.   <u>ARGUMENTS AND AUTHORITIES</u>

Under 29 U.S.C. § 216, an employee may bring an action against an employer "[on] behalf of himself ... and other employees similarly situated." Unlike a Rule 23 class action, in which plaintiffs "opt out" of the class, a § 216 plaintiff must "opt in" to become part of the class. *See* Fed. R. Civ. P. 23; *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1212 (5th Cir. 1995). Until recently, the method adopted by this Court for determining whether to certify a collective action under § 216(b) was the *Lusardi* two-tiered approach. Under *Lusardi*, the plaintiff would notify potential

---

[8] Exs. "4" & "5" at ¶ 3; Ex. "6" at ¶ 2; Exs "7" to "10" at ¶ 5.

[9] Exs. "7" to "10" at ¶ 3.

[10] Exs. "4" & "5" at ¶ 5; Exs. "7" to "10" at ¶ 8.

[11] Exs. "4" & "5" at ¶ 6; Exs. "7" to "10" at ¶ 9.

members of the action and then the court would engage in a factual determination as to whether the putative class members are similarly situated. *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987); *Mooney*, 54 F.3d at 1213–14.

However, earlier this year, the Fifth Circuit handed down a new opinion. In *Swales v. KLLM Transport Servs., LLC*, 985 F.3d 430 (5th Cir. 2021), the Fifth Circuit abrogated the *Lusardi* approach. "Instead of adherence to *Lusardi*, or any test for 'conditional certification,' a district court should identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of 'employees' is 'similarly situated.' And then it should authorize preliminary discovery accordingly." *Id.* at 441. The purpose of this analysis is to determine "early in the case, **whether merits questions can be answered collectively**." *Id*. at 442 (emphasis added). In other words, the Fifth Circuit explained that when the facts and legal arguments relevant to proving the Plaintiff's claims are the same facts and legal arguments relevant to proving the Class Members' claims, certification should be granted.

In this case, the Court previously authorized preliminary discovery.  That discovery has been completed and demonstrates that this case should be certified as a collective action. The Court should now grant this Motion for Certification and authorize notice to the Class Members.

## A. Based on the holding in *Swales*, the Court should grant this Motion for Certification and authorize notice to the Class Members.

In *Swales*, the Fifth Circuit explained that where "the plaintiffs all have the same job description and the allegations revolve around the same aspect of that job," certification should likely be granted. *Id.* at 441-42.  The Fifth Circuit stated as follows:

> For example, [] notice might be justified when the pleadings and only preliminary discovery show sufficient similarity between the plaintiffs' employment situations. In those types of cases, **the plaintiffs all have the same job description**, **and the allegations revolve around the same aspect of that job**.

14

*Id*. (emphasis added).

The facts in the present case are ideal for certification under *Swales*.  Here, the Class Members performed the same job duties and the allegations that they are owed wages revolve around the same work that they all performed at Temptations.  Moreover, none of the witnesses who were deposed testified that the Class Members are different in any material way, as noted earlier.  Indeed, the following facts are undisputed: the Plaintiffs and Class Members:

- Performed the same job duties;[12]

- Paid the same house fees;[13]

- Followed the same policies and procedures;[14]

- Clocked in and out using the same time clock system;[15]

- Were required to follow all "House Rules;"[16]

- Were required to maintain a professional appearance and act professionally at all times;[17]

- Were interviewed and hired by the managers at Temptations;[18]

- Were supervised by the managers at Temptations;[19]

- Were subject to the same level of control;[20]

- Worked during hours set by the managers of the Temptations;[21]

---

[12] Ex. "1" at page 59:10 to 59:15; Ex. "3" at pages 152:23 to 153:4; Exs. "4" & "5" at ¶ 3; Exs. "7" to "10" at ¶ 5.

[13] Ex. "1" at page 115:15 to 115:21; Exs. "4" & "5" at ¶ 4; Exs. "7" to "10" at ¶ 6; Ex. "15"; Ex. "16'"; Ex. "20."

[14] Ex. "1" at page 121:8 to 121:21; Exs. "4" & "5" at ¶ 5; Exs. "7" to "10" at ¶ 8; Ex. "19."

[15] Ex. "3" at page 73:4 to 73:12; Ex. "13"; Ex. "14."

[16] Ex. "3" at page 80:17 to 80:25.

[17] Ex. "3" at pages 82:13 to 82:19, 83:19 to 83:21.

[18] Ex. "1" at pages 42:5 to 42:15; 43:6 to 43:20; Exs. "7" to "10" at ¶ 3.

[19] Ex. "1" at pages 72:20 to 73:1; Exs. "4" & "5" at ¶ 6; Exs. "7" to "10" at ¶ 9.

[20] Ex. "1" at pages 99:11 to 99:24, 120:13 to 121:21; Ex. "19," Ex. "20."

[21] Ex. "3" at pages 112:19 to 112:22, 113:4 to 113:7.

i   Defendants controlled all aspects of the club, including the promotions, lighting, hiring of waitstaff, insurance, inventory, and music;[22]

i   Were not paid any wages by Defendants:[23]

i   Earned tips from customers as compensation:[24]

i   Did not have formal dance training;[25] and

i   Were all classified as independent contractors.[26]

The Fifth Circuit in *Swales* stated that certification should be granted when "merits questions can be answered collectively." *Swales*, 985 F.3d at 442.  Here, the material facts with respect to the Plaintiffs are the same material facts for the Class Members.  Similarly, the legal issues relevant to the Plaintiffs' claim that they were employees are the same legal issues relevant to the claims of the Class Members.  Thus, the liability question as to whether the dancers at Temptations are employees or independent contractors can be resolved on a class basis.

Indeed, the Court can evaluate liability on a class basis by addressing these common questions: (1) did the Plaintiffs and Class Members perform low skilled work indicative of employee status, (2) did Defendants exert control over the Plaintiffs and Class Members through the policies and procedures at the club (including the policy of dancers paying house fees, dancing a rotation on stage, clocking in and out, etc.) and the supervision by the managers of Temptations over the dancers, (3) were the Plaintiffs and Class Members compensated in a manner indicative of employee status (they were primarily paid tips like waiters and bartenders), (4) were the Plaintiffs and Class Members required to apply for the job, be interviewed, and approved to work

---

[22] Ex. "3" at pages 59:18 to 60:20, 114:10 to 114:15, 144:10 to 145:1, 145:21 to 146:1, 147:12 to 147:19, 147:24 to 148:4.

[23] Ex. "1" at page 113:20 to 113:24; Ex. "3" at page 151:14 to 151:20.

[24] Ex. "1" at page 58:10 to 58:15; Exs. "4" & "5" at ¶ 4; Exs. "7" to "10" at ¶ 7.

[25] Ex. "1" at pages 102:24 to 103:6; Ex. "3" at page 132:8 to 132:10.

[26] Ex. "3" at page 151:6 to 151:20.

16

at Temptations by the managers, and (5) were the Plaintiffs and Class Members subject to being disciplined or fired for not following Defendants' policies and procedures. These common questions can be resolved on a class basis because the facts and evidence are the same for the Plaintiffs and Class Members. Therefore, the *Swales* decision gave broad authority to the Court to certify a collective action and described the facts of this case as the type of case that is appropriate for certification. The Court should now exercise its broad authority and approve the stipulation allowing notice to the Class Members.

**B. Nearly every court in the Fifth Circuit faced with the issue of whether to certify a collective action following *Swales* has granted certification.**

Plaintiffs' Counsel has found eight decisions where courts in the Fifth Circuit addressed the issue of certification under the FLSA following *Swales*. In six of the decisions, certification was granted. *See Sterling v. Greater Houston Transport. Co.,* No. Civ. A. 4:20-cv-0910, 2021 WL 2954663 (S.D. Tex. Jul. 14, 2021); *Young v. Energy Drilling Co.*, No. Civ. A. 4:20-cv-1716, 2021 WL 1550343 (S.D. Tex. Apr. 20, 2021); *T.S. v. The Burke Foundation*, No Civ. A. 1:19-cv-809, 2021 WL 1807994 (W.D. Tex. Feb. 22, 2021); *Hernandez v. Pritchard Indus. (Southwest), LLC*, No. Civ. A. 20-cv-0508, 2021 WL 1146005 (W.D. Tex. Mar. 25, 2021); *Badon v. Berry's Reliable Resource, LLC*, No. Civ. A. 19-cv-12317, 2021 WL 933033 (E.D. La. Mar. 11, 2021); *Smith v. P&B Intermodal Servs., LLC*, No. Civ. A. 3:20-cv-03618-B (N.D. Tex. May 26, 2021). Additionally, in *Segovia v. Fuelco Energy, LLC*, No. Civ. A. 17-1246-JKP, 2021 WL 2187956 (W.D. Tex. May 28, 2021) decertification of a previously certified class was denied. Thus far, when certification under the FLSA has been in dispute after the *Swales* decision was issued, <u>Fifth Circuit courts have granted certification approximately 80% of the time</u>.

Specifically, the Chief Judge of the Southern District of Texas – Lee Rosenthal, granted certification of a collective action in *Sterling v. Greater Houston Transport. Co.,* No. Civ. A. 4:20-

cv-0910, 2021 WL 2954663 (S.D. Tex. Jul. 14, 2021).  In *Sterling*, a group of drivers brought a lawsuit alleging that they were misclassified as independent contractors when they should have been classified as employees under the FLSA – the very same issue currently before this Court. *Id*. at *1.  The court stated as follows:

> **Sterling has sufficiently shown, on the current record, that the court can determine the relevant threshold issues on a class-wide, rather than, individualized, basis.** Sterling points to driver deposition testimony showing that the drivers in the METROLift program all had the same job title, performed the same duties, were paid under the same compensation arrangements, wore the same uniforms, followed the same policies and procedures, were subject to the same hiring requirements, completed the same training, were supervised in the same way, were subject to the same level of control, and were required to follow identical METROLift contracts.

*Id*. at *2 (emphasis added).

Chief Judge Rosenthal further explained that when "the potential members' claims center on the same facts and evidence as to whether the [workers] are employees or independent contractors," certification should be granted. *Id.* at *3.  Certification was appropriate in *Sterling* because all of the potential class members performed the same job duties, had the same job title, were paid under the same compensation arrangements, followed the same policies and procedures, and were classified the same. *Id.* at *2.  Those facts are nearly identical to the facts in the present case.

Similarly, Judge Lake approved certification in *Young v. Energy Drilling Co*., No. Civ. A. 4:20-cv-1716, 2021 WL 1550343 (S.D. Tex. Apr. 20, 2021).  In *Young*, the court certified a broad class that included "rig managers, drillers, derrickmen, motormen, floormen, and toolpushers." *Id.* at *3.  The court determined that the class members, despite having different job titles and job duties, were paid the same types of bonuses. *Id*.  The court also determined that the class members

were subject to the same pay practice of those bonuses being classified as discretionary. *Id*. The court found these facts alone sufficient for certification and stated:

> No further discovery is needed to conclude that Young is similarly situated to other employees who were subjected to the same pay practice. The evidence which Young has provided supports approval of a notice for the positions and bonuses discussed above.

*Id*.

Likewise, in *T.S. v. The Burke Foundation*, No Civ. A. 1:19-cv-809, 2021 WL 1807994 (W.D. Tex. Feb. 22, 2021), the court granted certification under the FLSA to a class of minors who were alleged to have worked for a treatment home (where they resided) but were not paid any wages. The court defined the "central question" as whether the plaintiffs were subject to the FLSA and entitled to the compensation for the time they spent on work projects while being residents of the defendant. *Id*. at *4. In other words, the central question was whether the plaintiffs were subject to the protections of the FLSA. *See id*. The *T.S.* Court granted certification because this question could be resolved on a class basis. *See id*.

> Plaintiffs have made a sufficient factual showing that the potential class members' claims all center on the same factual nexus and injury—non-payment of wages for completion of Work Projects at the direction of Pathfinder-RTC.
> …
> The Court thus finds that Plaintiffs have met their burden of showing that a similarly situated group of potential plaintiffs exists, and that no threshold issues prevent the issuance of notice. Therefore, notice is warranted.

*Id*. at *4-*5.

In *Hernandez v. Pritchard Indus. (Southwest), LLC*, No. Civ. A. 20-cv-0508, 2021 WL 1146005 (W.D. Tex. Mar. 25, 2021), the court granted certification for a broad group of janitorial workers who were not paid overtime wages when they worked more than 40 hours in a week. *Id*. at *1-*2. The court certified a class that consisted of workers with the job titles: "Working Building Supervisor, "General Service Worker," "General Cleaner," and "Janitor." *Id*. at *2.

Finally, in *Badon v. Berry's Reliable Resource, LLC*, No. Civ. A. 19-cv-12317, 2021 WL 933033 (E.D. La. Mar. 11, 2021), the court denied a motion to decertify a class of workers who were alleged to have been misclassified as independent contractors. In *Badon*, the court stated that the "primary dispute in this matter is whether Plaintiffs and Opt-Ins were independent contractors or employees." *Id*. at *3. The *Badon* Court denied the motion to decertify following *Swales* because the court determined that it was able to resolve the liability question of whether the plaintiffs were employees or independent contractors on a class basis. *See id*.

> That said, what evidence is before the Court suggests that the members of the conditional class are similarly situated so that this matter could appropriately be tried on a collective basis. Plaintiffs have provided the affidavits of Stacey Badon and Anthony Badon, **which indicate that the factual and employment settings for home healthcare workers vis-à-vis Defendants were similar.**

*Id*.

In this case, the facts are stronger than those in *Sterling*, *Young*, *T.S.*, *Hernandez*, and *Badon*. In the present case, there is no dispute that the Plaintiff and Class Members were subject to the same work conditions. The pre-notice discovery demonstrated that there are no material distinctions between the Plaintiffs and Class Members in terms of job duties, policies/procedures, compensation, the level of control and supervision exercised over them, and job classification as independent contractors. Even Defendants' Corporate Representative was not able to identify any distinction between the Plaintiffs and Class Members. Under these facts, the Court should authorize notice to the Class Members just like in *Sterling*, *Young*, *T.S.*, *Hernandez*, and *Badon*.

**C. Under similar facts, courts across the country have granted certification to dancers seeking unpaid wages under the FLSA as result of being misclassified as independent contractors.**

As previously mentioned, Plaintiffs are not the first dancers to challenge their classification as independent contractors. This area of the FLSA is well traversed, yet the industry, and

Defendants in particular, shockingly continue to violate the law. Nonetheless, the vast majority of all district courts have granted certification under nearly identical facts. *See, e.g., Woods v. Club Cabaret, Inc*., 140 F. Supp. 3d 775, 781 (C.D. Ill. 2015) (granting certification and noting that <u>93% of all dancer cases have been certified as collective action**s**</u>) (collecting cases); *see also Degidio v. Crazy Horse Saloon & Rest., Inc*, No. 4:13-CV-02136-BHH, 2015 WL 5834280, at *19 (D.S.C. Sept. 30, 2015 (collecting cases). The following is a small sample of cases that have been certified under very similar facts as this case:

- *Rosebar v. CSWS, LLC*, No. 18 C 7081, 2020 WL 43015, at *3 (N.D. Ill. Jan. 3, 2020) (granting certification for a class of dancers alleging misclassification where plaintiffs' "declarations establish that they and the proposed members performed the same job duties and were subjected to the same working conditions and compensation structure");

- *Kesley v. Entm't U.S.A. Inc.*, 67 F. Supp. 3d 1061 (D. Ariz. 2014) (granting certification of class of dancers claiming unlawful classification as independent contractors and denial of wages and established that other dancers who worked for defendants were similarly situated);

- *De Angelis v. Nat'l Entm't Grp., LLC*, No. 2:17-CV-924, 2019 WL 6715974, at *4 (S.D. Ohio Dec. 10, 2019) (granting certification of class of dancers based on Plaintiff's affidavit stating that "that she was required to sign a document classifying her as an independent contractor, that [the club] maintained policies and pay structures that applied to herself and all dancers, that [the club] maintained a dress code and etiquette guidelines, and that [the club] determined what services dancers would offer");

- *Nesselrode v. Underground Casino & Lounge, LLC*, No. 3:11-CV-92, 2012 WL 4378163 (N.D.W. Va. Sept. 25, 2012) (granting certification of class of dancers claiming unlawful classification as independent contractors and denial of wages);

- *In re Penthouse Exec. Club Comp. Litig.*, No. 10 CIV. 1145 NRB, 2010 WL 4340255 (S.D.N.Y. Oct. 27, 2010) (granting certification and class notice to group of dancers where Plaintiff alleged that dancers were mislabeled as independent contractors); and

- *D'Antuono v. C&G of Groton, Inc.,* No. 3:11CV33 MRK, 2011 WL 5878045 (D. Conn. Nov. 23, 2011) (granting certification and notice to a group of dancers where plaintiff alleged the class was misclassified, and evidence was sufficient to demonstrate that class members were victims of a common policy that violated the law).

As another court stated in a similar dancer FLSA case, certification is appropriate when the

evidence demonstrates the following:

> all [dancers are] classified as independent contractors. None of them are paid wages. They are all subject to the same requirements regarding house fees and use fees for… VIP rooms; They are all subject to the same or similar 'guidance' and 'suggestions' regarding their attire, discouraged behavior, and tip outs. **In short, the defendant has a paradigm for how it does business and that paradigm does not appear to vary in any meaningful way with regard to individual members of the class.**

*Degidio v. Crazy Horse Saloon & Rest., Inc*, No. 4:13-CV-02136-BHH, 2015 WL 5834280, at *20 (D.S.C. Sept. 30, 2015) (emphasis added).

That is precisely the way Defendants operate their business.  The Class Members were all classified as independent contractors, none of them were paid wages, they were all subject to the same requirements regarding house fees, they were all subject to the same policies, and required to give tip outs.  The Plaintiffs' and Class Members' work conditions were essentially identical.

As such, Plaintiffs and Class Members are "similarly situated" under the FLSA.  In accordance with the majority of federal courts across the country, including those in the Fifth Circuit following *Swales*, this Court should grant certification and authorize notice here.

**D. It appears that Defendants are not disputing that the Plaintiffs and Class Members are "similarly situated."  Instead, Defendants wrongly believe that certification should be denied because the Court must first find Defendants liable as an employer. Defendants' argument improperly "places the cart before the horse."**

It appears that Defendants' sole argument is that the Court should deny certification because the Court has not yet granted summary judgment finding the dancers to be employees under the FLSA.  Defendants' argument is irrelevant because the issue at this stage is not whether the Plaintiffs will ultimately prevail, but whether the Court can decide whether the Plaintiffs and Class Members are employees or independent contractors <u>on a class basis</u>.

Defendants' argument improperly places the "cart before the horse." *See Eisen v. Carlisle & Jacqueline,* 417 U.S. 156, 178 (1974) ("In determining the propriety of a class action, the

question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the

merits....").  The Supreme Court has noted that a named plaintiff in a potential class action has a

"procedural ... right to represent a class" that is independent of his substantive claims. *United States*

*Parole Commission v. Geraghty*, 445 U.S. 396, 402 (1980)); *see also Valentino v. Carter-Wallace,*

*Inc.*, 97 F.3d 1227, 1232 (9th Cir. 1996) (noting that the merits of the case are irrelevant to class

certification).

The Fifth Circuit addressed this precise issue in *Miller v. Mackey Intern., Inc.*, 452 F.2d

424, 427 (5th 1971) and stated as follows:

> This portion of the order indicates to us that in passing on the propriety of the class
> action the district judge may have considered whether the petition stated a cause of
> action or whether Miller would succeed on the merits. This was improper. In
> determining the propriety of a class action, the question is not whether the plaintiff
> or plaintiffs have stated a cause of action or will prevail on the merits, but rather
> whether the requirements of Rule 23 are met.
>
> **The determination whether there is a proper class does not depend on the
> existence of a cause of action. A suit may be a proper class action, conforming
> to Rule 23, and still be dismissed for failure to state a cause of action.**

*Id.* (emphasis added).

At the certification stage, the Court should not decide who will ultimately prevail. *See id;*

*see also Vaughn v. Document Grp. Inc.*, 250 F. Supp. 3d 236, 239 (S.D. Tex. 2017).  Whether

Defendants actually violated the FLSA is a question that will be answered at a later date, after the

Parties have had the benefit of unimpeded discovery. *See Pereira v. Foot Locker, Inc.,* 261 F.R.D.

60, 63–64 (E.D. Pa. 2009).

Indeed, the *Swales* Court made clear that the Court should not making a liability finding at

the certification stage, stating that there should be "[n]o judicial thumbs (or anvils) on the scale"

related to the merits of the case at the certification stage.  *Swales*, 985 F.3d at 436 (emphasis

added). Instead, the issue for certification is simply "whether merits questions can be answered

collectively" and this certification decision must be made "as early as possible." *Id.* at 441-442. Despite have months of discovery and multiple rounds of briefing on certification, there is simply no evidence that the Plaintiffs and Class Members are *dissimilar* in any significant way.  As such, the Court should now grant the Motion for Certification and authorize notice to the Class Members.

**E. Assuming, *arguendo*, that the Court should make a liability finding at this stage, the overwhelming evidence is that the dancers are employees under the FLSA.**

As noted earlier, the Fifth Circuit has already determined that dancers working under the same conditions as Plaintiffs and the Class Members are employees and not independent contractors under the FLSA. *Reich v. Circle C. Investments, Inc.*, 998 F.2d 324, 329 (5th Cir. 1993). Nevertheless, in determining whether a worker is an employee or an independent contractor, the "economic reality" test applies. *Id.*; *Herman v. Express Sixty-Minutes Delivery Serv., Inc.*, 161 F.3d 299, 303 (5th Cir. 1998).  This test evaluates whether the worker is economically dependent upon the alleged employer or is instead in business for herself. *Reich*, 998 F.2d at 327.

Specifically, the economic reality test looks to the following factors: (1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the workers' opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship. *Id*. Some courts will also look at whether the workers were an integral part of the business. *See Itzep v. Target Corp.*, 543 F. Supp. 2d 646, 653 n.54 (W.D. Tex. 2008) (citing *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 72 (2d Cir. 2003)).  No single factor is determinative.  *Brock v. Mr. W Fireworks, Inc.*, 814 F.2d 1042, 1043-44 (5th Cir. 1987).  Instead the central inquiry is whether the worker is in business for herself or is dependent upon the purported employer. *Id*.

24

After applying this five-factor test, the court in *Reich* determined that dancers at the gentlemen's club were "'employees' covered by the FLSA." *Reich*, 998 F.2d at 328. The Fifth Circuit explained:

> A dancer has no specialized skills and her only real investment is in her costumes. [The club] exercises significant control over a dancer's behavior and opportunity for 'profit.' The transient nature of the work force is not enough here to remove the dancers from the protections of the FLSA. In analyzing the five factors, we must not lose sight of economic reality. **Here, the economic reality is that the dancers are not in business for themselves but are dependent upon finding employment in the business of others. We reject the defendants' creative argument that the dancers are mere tenants who rent stages, lights, dressing rooms, and music from [the club].**

*Reich*, 998 F.2d at 328–29 (emphasis added).  The same is true here.

Federal courts across the country have agreed with the Fifth Circuit in holding that dancers are employees instead of independent contractors under the FLSA.[27] The facts in the present case are the same and an application of the economic realities test establishes that the Plaintiffs and Class Members were employees.

### 1.  Degree of Control.

"Control is only significant when it shows an individual exerts such a control over a meaningful part of the business that she stands as a separate economic entity."  *Mr. W Fireworks*, 814 F.3d at 1049.  "[T]he lack of supervision over minor regular tasks cannot be bootstrapped into an appearance of real independence."  *Id.*

---

[27] *See Degidio v. Crazy Horse Saloon & Rest., Inc*, No. 4:13-CV-02136-BHH, 2015 WL 5834280, at *19 (D.S.C. Sept. 30, 2015) ("the vast majority of the district courts… to have considered whether dancers are employees or independent contractors, have found them to be employees") (collecting cases); Michael H. LeRoy, Bare Minimum: Stripping Pay for Independent Contractors in the Share Economy, 23 Wm. & Mary J. Women & L. 249 (2017), https://scholarship.law.wm.edu/wmjowl/vol23/iss2/5 (finding that 93% of court cases ruling on the issue held dancers to be employees, not independent contractors, under the FLSA) (collecting cases); *see also e.g, Verma v. 3001 Castor, Inc*., 937 F.3d 221, 232 (3d Cir. 2019) (holding that dancers were employees under the economic realities test); *Jones v. Shac LLC*, No. 215CV01382RFBNJK, 2019 WL 4246681, at *11 (D. Nev. Sept. 6, 2019) (same); *Shaw v. Set Enterprises, Inc*., 241 F. Supp. 3d 1318, 1327 (S.D. Fla. 2017) (same); *Thompson v. Linda And A., Inc*., 779 F. Supp. 2d 139, 151 (D.D.C. 2011) (same).

Here, Defendants exercised a significant amount of control over the Plaintiffs and Class Members.  First, no dancer can simply walk into Temptations and begin dancing.  In contrast, any person with a car and a cell phone can drive for Uber or Lyft.  Instead, a dancer must complete an application, submit to a background check, be interviewed by the manager at Temptations, and be approved to work at the club.[28]  Second, after being hired, the dancers must follow Defendants' policies and procedures.  For example, (i) they are required to clock in and out each shift,[29] (ii) they must pay the house fees set by Defendants,[30] (iii) they have to dance a stage rotation set by Defendants,[31] (iv) they must be dressed and ready to work before clocking in,[32] (v) they must be clocked in by 10 pm,[33] (vi) they are required to work during the hours set by Defendants,[34] (vii) the dancers must maintain a professional appearance,[35] and (viii) the dancers must act professionally at all times.[36]  Third, Defendants set the minimum price for dances[37] and controlled all aspect of the club, including music, lighting, advertising and insurance.[38]  These factors weight in favor of employee status.  *See Reich*, 998 F.2d at (finding that instructing dancers to charge minimum prices for dances and choosing the music indicated control); *see also Hurst*, 354 F. Supp. 3d at 1371-72 ("requiring Plaintiff to pay a house fee,…setting minimum prices she could charge for services, controlling the hours of operation,… and charging her higher fees if she left early"

---

[28] Ex. "1" at pages 42:5 to 42:15, 43:6 to 43:20; Exs. "7" to "10" at ¶ 3.

[29] Ex. "3" at pages 73:4 to 73:12, 76:23 to 76:25; Ex. "13," Ex. "14."

[30] Ex. "1" at page 115:15 to 115:21; Exs. "4" & "5" at ¶ 4; Exs. "7" to "10" at ¶ 6; Ex. "15"; Ex. "16"'; Ex. "20."

[31] Ex. "1" at page 62:8 to 62:16; Ex. "3" at page 85:14 to 85:24.

[32] Ex. "19."

[33] *Id*.

[34] Ex. "3" at pages 112:19 to 112:22, 113:4 to 113:7.

[35] Ex. "3" at pages 82:13 to 82:19, 83:19 to 83:21.

[36] *Id*.

[37] Exs. "4" & "5" at ¶ 5; Exs. "7" to "10" at ¶ 8; Ex. "11."

[38] Ex. "3" at pages 59:18 to 60:20, 114:10 to 114:15, 144:10 to 145:1, 145:21 to 146:1, 147:12 to 147:19, 147:24 to 148:4.

indicated control).

Nevertheless, the facts in this case are even stronger than those in other dancer FLSA cases. Here, the dancers were directly supervised by the managers at Temptations.  Ms. Smith testified as follows:

> 20   Q.   Okay.  What do managers do at the club?
> 21   **A.   I mean, they manage the -- the facility.**  They
> 22   manage the employees.  They are paid employees.  And
> 23   they pretty much provide protection for us.  And, you
> 24   know, if there's a dispute between girls and we need a
> 25   mediator, you know, they're kind of there to assist us
> 1   through that process as well.

(Ex. "1" at pages 72:20 to 73:1) (emphasis added).

> 18   **Q.   So is it fair to say that the person in charge**
> 19   **of the club is the manager?**
> 20      **A.   That's usually how it goes, yes.**
> 21      **Q.   Okay.  And it's the manager's responsibility**
> 22   **to make the club -- to -- to oversee all of the**
> 23   **operations of the club, correct?**
> 24      **A.   Correct.**
> 25      **Q.   If a -- if an -- if an entertainer/dancer is**
> 1   **told by the manager that her contract has been**
> 2   **terminated or cancelled, does that dancer have to go to**
> 3   **the locker room and get her stuff?**
> 4      **A.   Yes.**

(*Id.* at pages 99:18 to 100:4) (emphasis added).

Like in *Reich*, this factor weighs in favor of employee status.

### 2.  *Extent of the Relative Investment.*

The investments considered in determining employment status are capital expenditures, such as risk capital, equipment, and capital investments.  *See Mr. W Fireworks, Inc.*, 814 F.2d at 1052.  While every worker "invests" his know-how into the job he is tasked with, this cannot be regarded as an individual investment which would classify that individual as an independent contractor rather than an employee.  *Karna v. BP Corp. N. Am., Inc.*, CIV.A. H-12-0101, 2013

WL 1155485, at *9 (S.D. Tex. Mar. 19, 2013) *vacated on other grounds Karna v. BP Corp. N. Am., Inc.*, 11 F. Supp. 3d 809 (S.D. Tex. 2014).

The investment factor also weighs in favor of employee status because Defendants invest far more than any dancer. *See Reich*, 998 F.2d at 328 ("A dancer's investment in costumes and a padlock is relatively minor to the considerable investment [Defendants] ha[ve] in operating a nightclub."). As noted in the *Hart v. Peregrine* case, the court held that Defendants invested far more to operate the club than the dancers did in "paying for their clothes and make-up, paying a House Fee to perform at the Club each night, and tipping-out the 'house mom', management, and the DJ." *Hart v. Rick's Cabaret Int'l, Inc.* and *Peregrine Ent. Inc.*, 967 F. Supp. 2d 901, 919 (S.D.N.Y. 2013). The same is true here.

Defendants invest substantial sums towards alcohol, music, insurance, and employees.[39] The Plaintiffs and Class Members do not make any substantial investment to dance on stage at Temptations.

### 3. Workers' Opportunity for Profit or Loss.

Likewise, because Defendants are "responsible for advertisement, location, business hours, maintenance of facilities, aesthetics, and inventory of beverages and food,"[40] they have "a high degree of control over a dancer's opportunity for 'profit.'" *Reich*, 998 F.2d at 328. Accordingly, "[t]he dancers 'are far more closely akin to wage earners toiling for a living, than to independent entrepreneurs seeking a return on their risky capital investments.'" *Id.* (quoting *Mr. W Fireworks*, 814 F.2d at 1051). Here, the Plaintiffs and Class Members primarily worked for tips.[41]  They were

---

[39] Ex. "3" at pages 59:18 to 60:20, 114:10 to 114:15, 144:10 to 145:1, 145:21 to 146:1, 147:12 to 147:19, 147:24 to 148:4.

[40] *Id.*

[41] Ex. "1" at page 58:10 to 58:15; Exs. "4" & "5" at ¶ 4; Exs. "7" to "10" at ¶ 7.

not paid wages.[42]  They were entirely dependent on customers to tip them to earn a living.  The facts that existed in *Reich* are identical to the facts in this case.  This factor weighs in favor of employee status.

### 4.  Skill and Initiative Required in Performing the Job.

This factor looks to the degree of skill required for the job performed by the worker.  *See Halferty v. Pulse Drug Co., Inc.*, 821 F.2d 261, 267 (5th Cir. 1987).  Performance of work that requires little if any training may be regarded as evidence that a worker is an employee.  *See McLaughlin v. Seafood, Inc.*, 687 F.2d 876 (5th Cir. 1989).  The less skill involved, the more likely an employment relationship is found.  *See, e.g., Halftery*, 821 F.2d at 267.  Courts also look to whether the individual demonstrates some unique skill set or some ability to exercise significant initiative within the business. *See Hopkins*, 545 F.3d at 345.

Defendants did not require dancers at Temptations to have any formal dance training, and most did not.[43]  Under these circumstances, the Fifth Circuit has held that "dancers do not exhibit the skill or initiative indicative of persons in business for themselves." *Reich*, 998 F.2d at 328 (dancers did not need "long training or highly developed skills" and their "initiative [wa]s essentially limited to decisions involving her costumes and dance routines"); *see also Hart*, 967 F. Supp. 2d at 920 (noting that courts have "consistently held that there is limited genuine skill required to be an exotic dancer") (collecting cases). And so, this factor also weighs in favor of employee status.

### 5.  Permanency of the Relationship.

Although dancers often have short-term relationships with the clubs where they work,

---

[42] Ex. "1" at page 113:20 to 113:24; Ex. "3" at page 151:14 to 151:20.
[43] Ex. "1" at pages 102:24 to 103:6; Ex. "3" at page 132:8 to 132:10.

courts still find that they are employees under the FLSA. *See e.g. Reich*, 998 F.2d at 328. However, in this case, Plaintiffs and the Class Members worked for Defendants for extended periods of time, demonstrating a relatively permanent employment relationship. Plaintiff Rogers worked for Temptations for approximately 1.5 years, Plaintiff Miller worked for Temptations for over 2.5 years, and Plaintiff Wilburn worked for Temptations for approximately 3 years.[44]  Similarly, Ms. Smith worked for Defendants for approximately three years.[45] These durations of employment support employee status.[46] Thus, all five factors support employee status for the dancers.[47]

The economic reality of the relationship between Plaintiff/Class Members and Defendants is a striking example of an employee/employer relationship.  Plaintiff and the Class Members were not independent business owners, but dancers entirely dependent upon Defendants for continued work.  Under these facts, they are employees.

## CONCLUSION

The Court should grant the Plaintiffs' Motion for Certification because Plaintiffs have demonstrated that the Class Members form a homogenous group of workers who are similarly situated for FLSA purposes in every material respect. In particular, the Plaintiffs and the Class Members are (1) each asserting the same claim (2) after performing the same type of work (3) while being misclassified as independent contractors (4) pursuant to the same company-wide

---

[44] Ex. "4" at ¶ 3 (approximately 1.5 years); Ex. "5" at ¶ 3 (over 2.5 years); Ex. "6" at ¶ 2 (approximately 3 years).

[45] Ex. "1" at page 50:10 to 50:14.

[46] *Robicheaux v. Radcliff Material, Inc.*, 697 F.2d 662, 666 (5th Cir. 1983) (noting that durations of employment from "ten months to three years" have been deemed substantial periods of time to support employee status).

[47] Plaintiffs and the Class Members are also undoubtedly integral to Defendants' businesses. *See e.g. Martin v. Circle C Invs., In*c., No. MO–91–CA43, 1991 WL 338239, at *4 (W.D. Tex. Mar. 27, 1991) (topless dancers are the "main attraction" at a topless nightclub and "obviously very important" to the business of the nightclub). In fact, Eric Langan, Defendants' president, previously testified that "the most important thing to the [RCI] brand is that [it has] entertainers,'… add[ing]… [w]ithout the girls, we're just selling overpriced beers at a sports bar with bad TV's.'" *Hart*, 967 F. Supp. 2d at 921. In light of that testimony, "the [c]ourt comfortably conclude[d] as a matter of economic reality that the dancers at [RCI's club] were employees, not independent contractors." *Hart*, 967 F. Supp. 2d at 922.

policy. There are no material distinctions in job duties, classification, or pay system.  As a result, the Court can evaluate whether the Plaintiffs and Class Members are employees or independent contractors on a class basis.  Accordingly, the facts of this case are ideal for certification.

Respectfully submitted,

HODGES & FOTY, L.L.P.

By:  /s/ Don Foty_____
Don J. Foty
DFoty@hftrialfirm.com
Texas Bar No. 24050022
4409 Montrose Blvd, Suite 200
Houston, TX 77006
Telephone: (713) 523-0001
Facsimile: (713) 523-1116

ATTORNEY FOR PLAINTIFFS AND
CLASS MEMBERS

## CERTIFICATE OF SERVICE

This is to certify that on July 27, 2021 a copy of the foregoing instrument was served upon all parties via the Court's ECF.

*/s/ Don J. Foty*
Don J. Foty

31