# DECLARATION OF GABRIELLE ROGERS

Pursuant to 28 U.S.C. § 1746, the undersigned declares as follows:

1. My name is Gabrielle Rogers. I am of sound mind, at least eighteen (18) years of age and capable of making this statement. The facts contained within this declaration are within my personal knowledge, and I swear under penalty of perjury that such facts are true and correct.

2. I have signed and filed my consent to be part of this collective action lawsuit to show that I am interested in pursuing my claims against the Defendants.

3. I was formerly employed by the Defendants as a dancer. I worked for Temptations in Beaumont, Texas and in Sulfur, Louisiana. I began working for Temptations in February 2017 and I stopped working in July 2018. The primary duty of a dancer is to dance on stage and perform dances for customers of Defendants. I danced in the areas designated by Defendants and on stages owned by Defendants.

4. When I worked at Temptations, I was misclassified as an independent contractor and I was not paid any wages by Defendants. Instead, my compensation came in the form of tips given to me by customers. Worse, I was required to pay a portion of my tips to Temptations as a "house fee." The house fees were normally $10-$65 per shift depending upon the hour of the day. I was also required to give a portion of my tips to employees of Temptations, such as the house mom, DJ, and VIP manager, who normally did not receive tips from customers.

5. All dancers at Temptations, including myself, were required to follow a variety of policies set by Defendants. Some of the policies that applied to all dancers included the following:

    a. Temptations set the price for dances. Dancers were not allowed to charge a different price than that set by Temptations.

    b. Temptations implemented and scheduled various "specials" for the customers. For example, on Wednesdays, the price for dances was set at $10 per dance. Also, Temptations had "Show Time" hour where dancers were required to give two dances for the price of one. Dancers were required to give the money paid for these "Show Time" dances to Temptations. Dancers were not allowed to charge a different price than that set by Temptations.

    c. Temptations set the prices for the VIP room, a portion of which went to Temptations. Dancers were not allowed to charge a different price than that set by Temptations.

EXHIBIT "4"

    d. Temptations created the "Dance Dollars" system for customers to use. Dancers were required to take "Dance Dollars" as payment from customers.

    e. Temptations set the house fees that dancers were required to pay.

    f. Dancers were required to follow a stage rotation set by Temptations.

    g. Dancers were required to dance two songs on each stage in the club during the rotation. Dancers were required to be topless for the second dance.

    h. The DJ at Temptations had full discretion on the music that was played during the dances.

    i. Dancers were not allowed to sell alcohol to customers.

    j. Dancers were not allowed to leave the club with customers.

    k. Dancers were required to give a portion of their tips to the house mom and DJ.

    l. If dancers left their shift early, they were required to pay an additional fee to Temptations.

    m. Dancers were required to work during the hours of operation set by Temptations.

    n. Temptations recorded the start time and end time of the shifts worked by the dancers using the same time tracking system.

6. Additionally, when I worked at Temptations, I was subject to the control of Temptations. I was supervised by employees of Defendants and I was required to follow the instructions of the manager at Temptations. If I did not do so, I could have been punished, including being fired. Defendants had the authority to hire and fire all of the dancers.

7. Defendants also exercised control over how much dancers were able to earn per shift. The factors that contributed to whether dancers made money on a given shift included the number of customers, the wealth of the customers, and the house fees and other fees charged by Temptations. My ability to make money also depended on the various marketing decisions made by Temptations. Defendants controlled all advertising and marketing for Temptations. For example, Temptations maintains a website at http://www.temptationsclubs.com. I had no control or input into the design or content of the website and I did not have any control over the marketing or advertising decisions. I am not aware of any dancer that did.

8. Defendants also controlled all aspects of the club, including music selection, club layout, lighting, hiring of wait staff, hiring of security staff, the hours of operation, and the club's amenities. I did not make any decision or capital investment in the facilities, advertisements, sound system, lights, inventory, or equipment. I am not aware of any dancer that did.

9. I do not have formal dance training. In general, the other dancers at Temptations did not have formal dance training. Such training was not required to work at Temptations.

10. All dancers working for Temptations were misclassified as independent contractors. As a result, Defendants did not pay any wages to the dancers. The dancers only received tips from customers at Temptations. All dancers were required to pay the same house fees and to give portions of their tips to the same employees of Temptations. I am personally aware that other dancers for Temptations performed the same duties and had the same responsibilities as me. I am personally aware that they too were misclassified by Defendants as independent contractors and were not paid any wages. I have spoken with other dancers and I have worked with other dancers. Therefore, I am familiar with the working conditions, pay, and duties of the other dancers working at Temptations.

11. My work as a dancer required me to work long hours. In fact, there were times when I worked more than 40 hours in a week. I was not paid at the minimum wage rate of $7.25 per hour or paid overtime wages when I worked more than 40 hours. I am aware that other dancers were not paid the minimum wage rate of $7.25 per hour and were not paid overtime wages. That is because all dancers, such as myself, have been misclassified as independent contractors.

12. I was not an independent contractor and I did not operate an independent business. I did not have a business phone line, website, or business email address. I did not advertise my services, I did not rent office space, and I did not have employees. I am not aware of any dancer that did so. The dancers, including myself, primarily invested their time and their energy to perform their work for Temptations.

13. On the other hand, Defendants spent a significant amount of money, including towards building space, sound and light equipment, stages, employees, alcohol, advertisements, and a website. Defendants spent substantially more money than any dancer, including myself.

14. Working as a dancer at Temptations was my job and I relied upon this work to earn a living. I was not in business for myself but was one dancer among many dancers working at Temptations.

15. I worked closely with other dancers at Temptations and I have talked with them about their work and their classification as independent contractors. We talked during our shifts about our job, hours worked, club policies and other aspects of our work. What I describe in this declaration applied to all the dancers. They too were not paid any wages, performed

the same job duties as me, were required to follow the same policies and procedures, and were misclassified as independent contractors.

16. During my conversations with other dancers, I became aware that they are also upset with having been misclassified as independent contractors. I believe that other dancers would be interested in joining this lawsuit. However, many of the dancers with whom I have spoken to about these kinds of lawsuits have said that they are afraid of being fired or retaliated against. Court intervention explaining their rights under the law would help alleviate the fear of joining this lawsuit.

17. To reach these individuals, I believe that sending a notice by email and text message would be very effective. I believe if the Notice is only sent by regular mail, it would not be effective in reaching many of the drivers. We regularly communicate by telephone and therefore, will more likely receive the notice by text message.

18. Also, email addresses do not change when the dancers change home addresses. The dancers can also access their email accounts when they are away from home. All that is needed is an Internet connection.

19. I swear under penalty of perjury that the foregoing is true and correct.

Further Declarant Sayeth Not.

DocuSigned by:

Gab

F6216FA469544FC...

NAME

9/24/2020

Date